309 Ga. 457
FINAL COPY

S20A0648. THE STATE v. HINTON.

PETERSON, Justice.

The trial court found that the State failed to prove that Evontae Hinton, after invoking his right to remain silent, initiated further discussions with a detective and voluntarily waived his right to remain silent; the court therefore suppressed statements Hinton then made to the detective. The State appeals and argues that the trial court misapplied the law and made erroneous factual and credibility determinations, because the detective's testimony at the motion to suppress hearing clearly showed that Hinton waived his rights and reinitiated discussions with the detective. But the trial court was not required to credit the detective's testimony, and the State did not introduce any other evidence to meet its burden of establishing the voluntariness of Hinton's custodial statements. We affirm.

The State bears the burden of establishing by a preponderance of the evidence that a defendant's custodial statement was voluntary. *Philpot v. State*, 300 Ga. 154, 159 (3) (794 SE2d 140) (2016). As we have explained before, "[w]hen the facts material to a motion to suppress are disputed, it generally is for the trial judge to resolve those disputes and determine the material facts." *Hughes v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015). A trial court's findings of fact and credibility determinations will not be disturbed unless they are clearly erroneous. *Brown v. State*, 293 Ga. 787, 803 (3) (b) (2) (750 SE2d 148) (2013). In reviewing a trial court's order on a motion to suppress, we construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court and also limit our review of the disputed facts to those expressly found by the trial court. *Hughes*, 296 Ga. at 746 (1). "These principles apply equally whether the trial court ruled in favor of the State or the defendant." *Walsh v. State*, 303 Ga. 276, 282 (811 SE2d 353) (2018) (citation and punctuation omitted).

The State attempted to prove that Hinton's custodial statement was voluntary by calling only one witness at the motion to suppress hearing: Detective Michael Young of the Atlanta Police Department. Viewing Detective Young's testimony according to the principles set forth above, Detective Young testified that he wanted to speak to Hinton about a homicide he was investigating. After learning that Hinton might be present at a residence where other police officers were planning to execute a narcotics search warrant, Detective Young went to that residence. Detective Young encountered Hinton at the residence after Hinton was arrested. Detective Young drove Hinton to a police station and audio-recorded conversations with him during the drive. After arriving at the police station, Detective Young video-recorded further conversations with Hinton.

Based on these statements and other evidence, Hinton was later charged with multiple offenses in a multi-count indictment, and he moved to suppress his recorded conversations on the basis that they were not voluntary. At the motion to suppress hearing, the

State attempted to admit the recordings into evidence, but withdrew its attempt after Hinton objected for lack of authentication. At that hearing, Detective Young evinced only a general recollection of his encounter with Hinton, although he had reviewed the recordings prior to the hearing to refresh his memory. Detective Young said he "probably" elicited only Hinton's name before advising Hinton of his *Miranda*[1] rights. Detective Young did not remember exactly the advisement of rights he provided Hinton and explained that he usually reads off a printed card, which he did not have in his possession at the hearing.

Detective Young further testified that, after advising Hinton of his rights, Hinton said he did not want to talk to the detective. Detective Young thought Hinton assumed the detective was investigating a narcotics offense, so Detective Young informed Hinton that he was not there for that reason. According to Detective Young, when Hinton asked why the detective was there, Detective Young explained that he investigated "crimes against persons" but

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

could say no more because Hinton had said he did not want to talk to him without a lawyer. Detective Young testified that when Hinton began asking him questions, the detective reiterated that he could not talk to Hinton because Hinton asked for a lawyer. According to Detective Young, Hinton responded that he never said he did not want to talk to Detective Young, and an interview then commenced.

Detective Young admitted at the motion to suppress hearing, however, that when he reviewed the audio recording, he was unable to understand what Hinton had said regarding whether he wanted to talk and was unable to discern whether Hinton had asked for an attorney or wanted to stop the interview. Detective Young also admitted that Hinton did not complete a waiver-of-rights form showing that Hinton understood his rights and agreed to waive them. When asked if such a form was available at the police station at the time Hinton was interviewed, Detective Young said he was not sure. Detective Young also said that he did not ask Hinton about his level of education or whether Hinton read and understood the English language.

Following the hearing, the trial court granted Hinton's motion to suppress. In its order, the trial court recited Detective Young's testimony and noted that, once ruling that a defendant invoked his right to remain silent, the court must engage in a two-step inquiry to determine whether the defendant initiated further conversations with police and whether he voluntarily waived his right to remain silent. Under this analysis, the trial court concluded that Detective Young's testimony "was so vague regarding the conduct of the interview" that it failed to meet the State's burden of establishing that Hinton had initiated further conversations with the police and waived his right to silence voluntarily.

On appeal, the State objects to several factual findings made by the trial court, asserting that the record does not support them. The State claims that the trial court erred by concluding that Detective Young did not have an independent recollection of everything said to Hinton, and erred by concluding that Detective Young was not specific enough regarding his reading of *Miranda* rights to Hinton. The State also argues that even if the trial court's

factual findings were correct, the trial court misapplied the law to those facts because the *Miranda* warnings were adequate, Hinton understood those rights, and he voluntarily waived his right to remain silent.

After reviewing the record and the applicable law, we conclude that none of the State's arguments have merit. The central questions in this appeal are whether Hinton asserted his right to remain silent and, if he did, whether he waived that right by initiating a conversation with Detective Young. Our review of the record reveals that it supports the trial court's conclusions on those questions, and thus we find no reversible error in the trial court's grant of the motion to suppress.

1. *The record supports the trial court's conclusion that Hinton asserted his right to remain silent.*

Beginning with the first critical question, although the trial court did not expressly find that Hinton asserted his right to remain silent, its order makes clear that it implicitly found that he did, because the trial court focused its analysis on whether, after Hinton

invoked his right to remain silent, his subsequent statements were admissible.[2] See *Mack v. State*, 296 Ga. 239, 244 (2) (765 SE2d 896) (2014) ("If, after invoking his Fifth Amendment rights, a defendant is found to have initiated contact with authorities and then knowingly and intelligently waived his rights, his ensuing statements will be considered properly obtained."). Detective Young's testimony supports this finding, as he testified that Hinton did not want to talk after being advised of his rights. The State does not dispute this material fact in its appellate brief. Indeed, the State notes that "it is undisputed that [Hinton] initially decided to exercise that right." Instead, the State argues that the trial court made an erroneous factual finding regarding whether the *Miranda* warnings were adequate or understood. But these arguments are irrelevant to whether Hinton invoked his right, because "[a] person in the custody

---

[2] Although Detective Young appeared to testify that Hinton's reason for not wanting to talk was because Hinton wanted an attorney, the trial court made no mention of Hinton invoking his right to counsel. But regardless of which right Hinton invoked, the guiding principles remain the same in either situation — "police may not immediately subject a defendant who has invoked his right to counsel or his right to remain silent to further interrogation absent reinitiation by the defendant." *State v. Pauldo*, ___ Ga. ___, ___ (2) n.5 (___ SE2d ___) (2020) (emphasis omitted).

of law enforcement officers has a constitutional right to remain silent in response to their questions, regardless of whether he fully understands that right or has been advised of it under *Miranda*." *Davidson v. State*, 304 Ga. 460, 468 (4) (819 SE2d 452) (2018). Having answered the first question, we turn to the effect of Hinton's assertion of his right to remain silent.

2. *The record supports the trial court's conclusion that the State failed to establish that Hinton initiated further conversations with the police or that he voluntarily waived his right to remain silent.*

When a suspect indicates at any time prior to or during a custodial interview that he wishes to remain silent, the admissibility of statements after assertion of that right depends on whether police "scrupulously honored" the defendant's right to remain silent. See *Michigan v. Mosley*, 423 U.S. 96, 103-104 (96 SCt 321, 46 LE2d 313) (1975); *State v. Moon*, 285 Ga. 55, 57 (673 SE2d 255) (2009). Whether police have scrupulously honored a suspect's right to remain silent depends on several factors, including whether police immediately ended the interrogation once the suspect invoked his right to silence, whether police resumed the interrogation only after the passage of

a significant amount of time, and whether police focused on a different crime in the second round of questioning. See *Mack*, 296 Ga. at 243-244 (2) (citing *Mosley*); *Fields v. State*, 266 Ga. 241, 243 (1) (466 SE2d 202) (1996). An "interrogation" is defined as "express questioning by law enforcement officers" or its functional equivalent, meaning "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Lucas v. State*, 273 Ga. 88, 91 (2) (538 SE2d 44) (2000) (citation and punctuation omitted).

Even when a suspect's right to remain silent has not been scrupulously honored, a suspect may waive his right to remain silent by voluntarily reinitiating contact with the police, in which case his ensuing statements are admissible against him. See *Rowland v. State*, 306 Ga. 59, 62 (2) (829 SE2d 81) (2019); *Mack*, 296 Ga. at 244 (2). To the extent these issues depend on disputed issues of fact and questions of credibility, we must accept a trial court's factual

findings and credibility determinations unless clearly erroneous. See *Brown*, 293 Ga. at 803 (3) (b) (2).

Given that it is undisputed that Hinton asserted his right to remain silent, the State had the burden to prove that Detective Young scrupulously honored that right or that Hinton voluntarily waived that right by reinitiating contact with the detective. See *State v. Nash*, 279 Ga. 646, 648-649 (3) (619 SE2d 684) (2005). The record supports the trial court's finding that the State did not meet its burden in this respect.

Detective Young testified repeatedly that he did not have a clear memory of the relevant events. When asked whether he had an independent recollection of the advisements he had given Hinton, Detective Young said, "Not verbatim." Detective Young also testified that he did not "remember exactly" what Hinton said after Detective Young provided *Miranda* warnings. At another point, Detective Young confirmed that he did not have an independent recollection of where Hinton was sitting in the patrol car during the interview. Although he had tried to refresh his recollection by reviewing an

audio recording of his interaction with Hinton, Detective Young admitted that he was unable to understand what Hinton was saying in the recording. The trial court was authorized to conclude — as it did — that Detective Young did not scrupulously honor Hinton's assertion of his right to remain silent and that Hinton did not reinitiate contact with him. See *Miller v. State*, 288 Ga. 286, 289 (2) (702 SE2d 888) (2010) ("[T]he trier of fact is not obligated to believe a witness even if the testimony is uncontradicted and may accept or reject any portion of the testimony." (citation and punctuation omitted)).

The State argues that Hinton reinitiated communications with Detective Young, who honored Hinton's right to remain silent by responding to Hinton's questions by saying he could not talk to Hinton without his attorney being present. But the State's position would require crediting Detective Young's testimony on those points. The trial court's order indicates that the trial court questioned Detective Young's credibility, specifically citing the vague nature of his testimony and the detective's professed lack of

memory on key points. And it was for the trial court — not this Court — to determine whether Detective Young was credible.

The State has not shown that the trial court's credibility determination was clearly erroneous, or that the court erred in concluding that the State failed to show that Hinton reinitiated contact. Indeed, Detective Young admitted at the motion to suppress hearing that immediately after Hinton said he did not want to talk, Detective Young initiated further discussions by informing Hinton that he was there to investigate crimes against persons, because he believed that Hinton assumed the detective was investigating a narcotics offense. Having reviewed the trial court's order and Detective Young's testimony, the State has failed to show that the trial court's credibility findings were clearly erroneous and therefore has failed to show that the trial court erred in concluding that the State did not carry its burden of establishing that Hinton's statements were admissible. See *United States v. Johnson*, 812 F2d 1329, 1331 (11th Cir. 1986) (defendant's inculpatory statement made after invocation of right to counsel was inadmissible where

officer initiated discussion of the investigation against the defendant); *Nash*, 279 Ga. at 649-650 (3) (where law enforcement agent asked question related to the investigation that was not a routine booking question, the trial court did not err in suppressing statements made by defendant following assertion of his right to remain silent).

*Judgment affirmed. All the Justices concur.*

DECIDED AUGUST 10, 2020
Murder. Fulton Superior Court. Before Judge Rieder.
*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Juliana Sleeper, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellant.
*Deborah W. Young*, for appellee.