309 Ga. 888
FINAL COPY

S20A1258.  EGGLESTON v. THE STATE.

BETHEL, Justice.

James Eggleston was tried by a Stewart County jury and found guilty of felony murder and possession of a firearm during the commission of a felony in connection with Richard Byrd's death. Following the denial of his motion for new trial, Eggleston appeals, contending only that the evidence presented at trial was insufficient to sustain his convictions. Because the evidence was sufficient, we affirm.[1]

---

[1] The crimes occurred sometime between July 8 and 13, 2015. Eggleston was indicted by a Stewart County grand jury on March 20, 2017, for aggravated assault with a deadly weapon (hatchet) (Count 1); aggravated assault with a deadly weapon (firearm) (Count 2); felony murder based on aggravated assault (Count 3); possession of a firearm during the commission of a felony (Count 4); and possession of a knife during the commission of a felony (Count 5). A jury trial was held from November 6 to 8, 2017, and the jury found Eggleston guilty on Counts 1 to 4. The trial court entered an order of nolle prosequi as to Count 5. Eggleston was sentenced to life in prison without parole for felony murder, and the aggravated assault counts merged into the felony murder count. Eggleston was also sentenced to five years consecutive for possession of a firearm during the commission of a felony. Eggleston filed a timely motion for new trial on November 22, 2017. Eggleston later amended this motion for new trial on December 7, 2018. The trial court entered an order denying the motion on January 29, 2020. Eggleston filed a

Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following. Byrd leased property in Stewart County from Dan Simpkins. Byrd lived in a cabin on the property. Simpkins then sold that property to Eggleston sometime before July 2015. On separate occasions, Byrd and Eggleston individually went before a Stewart County Magistrate Judge with concerns regarding their sharing of the land. Byrd came to the judge to express his fear of Eggleston because he had a felony record and owned guns. Eggleston separately came before the judge to ask about Byrd being on the land; however, the judge said that there was nothing he could do because Byrd had signed a lease. The judge asked Eggleston if he had any guns, and he replied that he did not; he did say, however, that he owned a "tomahawk."

In July 2015, Eggleston went before the judge again to note that Byrd was late on his rent and to request a dispossessory warrant. Byrd was served with a dispossessory warrant on July 6.

timely notice of appeal on February 4, 2020, and the case was docketed in this Court to the August 2020 term and submitted for a decision on the briefs.

In response, Byrd told the judge that he would be off the property by July 12 and agreed to notify the sheriff's office when he vacated the premises.

On July 14, after not seeing or hearing from Byrd, the judge and a police officer visited the property together to see if Byrd had moved out. The officer noted that Eggleston, who lived in a camper trailer about 200 feet from Byrd's cabin, and his truck were unusually absent from the premises. After knocking on the door of Byrd's cabin and getting no response, the judge and the officer looked in the windows. Inside, they could see that furniture was disturbed, and a person was on the floor. When they entered the cabin, the officer saw Byrd propped up against the refrigerator, and he could tell by the smell that Byrd was deceased.

Georgia Bureau of Investigation ("GBI") Special Agent Bryan Smith assisted with the investigation. He noted that the kitchen table was turned on its side and that Byrd had received many sharp-force injuries. After reviewing the bloodstains, Agent Smith determined that Byrd had been slumped down on the ground

against the refrigerator when the perpetrator attacked him with a high degree of force. He also testified about the bloodstains' cast-off pattern, opining that a thin edged object had flung the blood.

Agent Smith found a fired bullet on the floor in front of the refrigerator where Byrd's body was found. Near the overturned kitchen table, he also found a sheath for holding some type of cutting instrument. The sheath could be hooked onto a belt and appeared to be designed to hold something like a hatchet. Agent Smith recovered several cartridge casings and bullets about ten to twelve feet from where Byrd was found and noted that bullet marks were located in the stereo and in the floor.

Byrd had been shot in the hip area. Agent Smith testified that Byrd had been shot in the location where he was found and that, based on the bloodstain patterns, Byrd was in the same slumped position when he received the majority of his injuries. Agent Smith further testified that no evidence suggested that the perpetrator had acted in self-defense. Based on his past experience as a paramedic,

Agent Smith believed Byrd died at least a day before he was discovered.

The medical examiner who performed Byrd's autopsy found more than 100 injuries on the body, including the gunshot wound and multiple sharp-force injuries likely caused by a sharp blade. Because the bullet fractured the very lowest part of Byrd's spine but was not fatal, the examiner explained that the gunshot might have caused Byrd to fall to the ground. She further testified that cuts on Byrd's hands were consistent with defensive wounds and that the cause of his death was the multiple sharp-force injuries and the gunshot wound to the hip. In her opinion, no particular injury would have caused Byrd's immediate death, and he essentially bled to death. She could not rule out a hatchet as being the cause of Byrd's sharp-force injuries.

Pursuant to a warrant, the GBI searched Eggleston's trailer and found a hatchet that fit inside the sheath that was found in the cabin. The hatchet seemed to match the specific indentations and wear marks found on and within the sheath. The hatchet had

transfer bloodstains on it and, after testing the blood, police determined that the DNA profile of the blood matched Byrd's. No evidence suggested that anyone besides Eggleston resided in the trailer.

Eggleston was later found and arrested in a hotel in Missouri with the assistance of local law enforcement on July 16, 2015. In Eggleston's hotel room, officers found a silver nine-millimeter handgun in an open suitcase. The gun contained a magazine but no ammunition. A GBI firearms examiner determined that all of the casings and bullets found at the crime scene, including the one found where Byrd's body had been, were fired from that gun. Officers also recovered a belt that Eggleston was wearing, which was later determined to have wear patterns indicating that the sheath found in Byrd's cabin had been worn on the belt.

Dan Severs, Eggleston's friend of 12 years, testified that he had been holding some of Eggleston's guns in his gun safe before May 2015. Around the time Eggleston moved to the Stewart County property, Eggleston took a gun, which Severs had been fixing, from

the safe. Severs identified that gun at trial as the nine-millimeter found in Eggleston's suitcase when he was arrested.

Severs testified that Eggleston said that he had a firearm with him in Georgia and that Byrd had bought him some ammunition. Severs also testified that Eggleston often carried the hatchet police found. He further testified that Eggleston told him he shot Byrd, though he did not say he had hit Byrd with a hatchet.

Eggleston argues that the evidence was insufficient to support the jury's verdicts because although the State proved that Eggleston had possession of the firearm that was used to shoot Byrd, the State could not prove beyond a reasonable doubt that Byrd died because of that gunshot and could not directly tie Eggleston to the hatchet. He argues that the verdicts therefore rested on circumstantial evidence that Eggleston used the hatchet to kill Byrd and, because the State failed to exclude other reasonable hypotheses for how the murder was committed (namely, that there was a second attacker who caused Byrd's sharp-force injuries), the convictions are

unsupported as a matter of law and should be overturned. We disagree.

We first note that the two aggravated assault counts merged with the felony murder count, and Eggleston was not sentenced on those counts. See footnote 1, above. Eggleston's challenge to the sufficiency of the evidence presented on the aggravated assault counts is therefore moot. See *Lupoe v. State*, 284 Ga. 576, 577 (1) n.2 (669 SE2d 133) (2008) (holding that a claim of insufficient evidence to support a conviction that has been merged into another conviction for sentencing purposes is moot). We thus limit our review to the two counts for which Eggleston was convicted and sentenced: felony murder predicated on aggravated assault and possession of a firearm during the commission of a felony. When evaluating the sufficiency of evidence as a matter of federal due process under the Fourteenth Amendment to the United States Constitution, the proper standard of review is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61

LE2d 560) (1979). This Court views the evidence in the "light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." (Citation and punctuation omitted.) *Hayes v. State*, 292 Ga. 506, 506 (739 SE2d 313) (2013).

OCGA § 16-5-1 (c) provides that "[a] person commits the offense of murder when, in the commission of a felony, he or she causes the death of another human being irrespective of malice." In this case, the indictment alleged that Eggleston caused Byrd's death during commission of the felony offense of aggravated assault by striking him multiple times with a hatchet and then shooting him, in violation of OCGA § 16-5-21.[2] Count 4 of the indictment alleged that Eggleston violated OCGA § 16-11-106 by being in possession of a firearm during the commission of an aggravated assault on Byrd.[3]

---

[2] OCGA § 16-5-21 (a) provides, in relevant part, that "[a] person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury     . . .."

[3] OCGA § 16-11-106 (b) (1) provides, in relevant part, that "[a]ny person who shall have on or within arm's reach of his or her person a firearm . . . during the commission of, or the attempt to commit . . . [a]ny crime against or

Though Eggleston argues the case rested entirely on circumstantial evidence, Eggleston's confession to Severs that he shot Byrd was direct evidence of his guilt. See *Goins v. State*, 306 Ga. 55, 56 (1) (829 SE2d 89) (2019). Even without considering this direct evidence of guilt, however, the circumstantial evidence was enough to support Eggleston's convictions.

In Georgia, "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-14-6. Whether alternative hypotheses are reasonable, however, is usually a question for the jury, as this Court will not disturb the jury's finding unless it is insufficient as a matter of law. See *Graves v. State*, 306 Ga. 485, 487 (1) (831 SE2d 747) (2019).

The jury heard evidence that Eggleston and Byrd had a contentious relationship. The jury also heard evidence from the

---

involving the person of another . . . and which crime is a felony, commits a felony. . . ."

crime scene investigator, Agent Smith, and the medical examiner that Byrd was shot and received the sharp-force injuries all while he was in front of the refrigerator. Severs identified the hatchet containing Byrd's blood on it, which was recovered from Eggleston's trailer, as the one Eggleston regularly carried on his person. This hatchet fit into the sheath that was found at the murder scene, and the wear patterns on the belt that Eggleston was wearing when he was arrested (after fleeing to Missouri) indicated that the sheath had been worn on the belt. Ballistics analysis also matched the gun that was found in Eggleston's hotel room when he was arrested to the gun that was used to shoot Byrd. On the basis of this evidence, the jury was authorized to find that Eggleston both shot Byrd and struck him with the hatchet, causing his death. The jury was also authorized to reject Eggleston's theory that a second attacker inflicted Byrd's sharp-force injuries. Accordingly, when viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to support Eggleston's convictions as a matter of due process and under OCGA § 24-14-6.

See *Frazier v. State*, 308 Ga. 450, 454 (2) (b) (841 SE2d 692) (2020).

See also *Vega v. State*, 285 Ga. 32, 33 (1) (673 SE2d 223) (2009) ("It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." (Citation and punctuation omitted.)).

*Judgment affirmed. All the Justices concur, except Warren, J., not participating.*

Decided September 28, 2020.

Murder. Stewart Superior Court. Before Judge Brown.
*Woodall & Pflepsen, Keith A. Pflepsen*, for appellant.
*Lewis R. Lamb, District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder. Assistant Attorney General*, for appellee.