NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: April 19, 2022

S22A0016. WATKINS v. THE STATE.

MCMILLIAN, Justice.

Following a bench trial in August 2019, Kevon Watkins was convicted of felony murder in connection with the death of his sister, Alexus Watkins.[1] On appeal, Watkins asserts that the trial court erred in declining to find him guilty of the offense of voluntary manslaughter instead of felony murder. We disagree and affirm.

1. Viewed in the light most favorable to the verdict, the

---

[1] The crimes occurred on February 2, 2018. On May 1, 2018, a Bibb County grand jury indicted Watkins for felony murder predicated on aggravated assault (Count 1) and aggravated assault (Count 2). At a bench trial held on August 1 and 2, 2019, Watkins was found guilty of both counts. On August 6, 2019, the trial court sentenced Watkins to serve life in prison for Count 1; Count 2 was merged into Count 1 for sentencing purposes. Watkins timely filed a motion for new trial. Following a hearing on October 30, 2019, the trial court denied the motion for new trial on December 2, 2019. Watkins timely appealed. The case was originally docketed in the Court of Appeals but was subsequently transferred to this Court, where it was docketed to the term of court beginning in December 2021 and submitted for a decision on the briefs.

evidence presented at trial showed that Watkins lived in Bibb County with his mother, Latoya Watkins, his 13-year-old brother, K. W., his infant nephew, C. T., and his 19-year-old sister, Alexus. On February 2, 2018, at 5:17 p.m., Latoya called 911 to ask for assistance with Watkins, who was 16 years old at the time, because he was "disobedient" and "being disorderly." A few minutes later, K. W. called 911 and reported that Watkins had Alexus in a "choke hold," that she was "knocked out," and that Watkins "was threatening to beat" their mother. He also told the dispatcher that their mother was trying to get Watkins off of Alexus, but Watkins was "still on [his] sister."

When Deputy Isaac Munguia arrived at the Watkinses' home at 5:30 p.m., he was met by Latoya at the front door. She told him that Watkins and Alexus were still fighting and pointed to the back bedroom. Deputy Munguia entered the home, but did not hear any fighting or arguing. When he found Watkins and Alexus in the corner of the back bedroom, Watkins appeared to be holding Alexus down. Deputy Munguia told Watkins twice to let go of his sister, and

2

when Watkins finally did so, her body "just kind of flopped." Alexus was nonresponsive, with her tongue hanging out of her mouth, and it appeared that she had urinated on herself. Deputy Munguia checked for a pulse, requested additional assistance, and immediately began administering CPR. He continued CPR until additional help arrived, but he was unable to get a response from Alexus. A video and audio recording of the incident recorded by Deputy Munguia's body camera was played at trial.

Alexus was transported to a hospital, where she was resuscitated and admitted into the intensive care unit with a diagnosis of cardiorespiratory failure with anoxic brain injury. Alexus experienced another cardiac arrest and suffered irreversible brain damage and multi-organ failure. She died the next day. The medical examiner determined that Alexus's cause of death was anoxic brain injury, caused by a lack of oxygen to the brain due to asphyxiation. The medical examiner observed multiple abrasions on Alexus's neck, sustained from a "friction-type injury," and an abrasion to her sternocleidomastoid muscle as a result of pressure

3

applied to her neck. The extent of Alexus's injuries indicated a prolonged period of asphyxia or oxygen deprivation, most likely for at least 15 minutes. The medical examiner explained that when pressure is applied to a person's neck in a way that cuts off the blood supply, that person will eventually become unconscious and go "limp" or "motionless," obviously indicating that something is wrong. The medical examiner further opined that if Alexus had been released within a minute or two of being held, she would have survived.

In her statement to law enforcement officers, Latoya explained that Watkins, who had a "nasty attitude" that day, had been playing video games and had reset the password for the internet so that no one else could use the internet. In response, Latoya unplugged the internet router and put the video game box in her bedroom. Watkins then went into her room, trying to fight her, and Alexus stepped in to protect her mother. Alexus grabbed Watkins in a bear hug and told him to "chill out" and to stop trying to fight with their mother. Watkins and Alexus began "tussling" on the floor, and Watkins put

4

Alexus in a chokehold. Although Latoya and K. W. tried hitting and punching Watkins while yelling for him to let Alexus go, they could not break the grip that Watkins had on Alexus.[2]

After being advised of his *Miranda*[3] rights, Watkins agreed to speak with Investigator Marcus Baker. Watkins said that he and his mother had gotten into an argument about the internet and that his sister had jumped in between them to stop the argument. Watkins then pushed his mother away and told her, "I don't want to hit you." Alexus grabbed Watkins, and they began fighting. Watkins put Alexus in a chokehold and continued to hold her even after she stopped moving because he "was mad." While he was holding Alexus, his mother called his father, and his little brother tried to get him to let go of Alexus, but he did not let her go until the second time Deputy Munguia asked him to step outside.

Watkins testified on his own behalf at trial and, contrary to his

---

[2] At trial, however, Latoya testified that Alexus came into her bedroom, charged at Watkins, and hit Watkins first.

[3] See *Miranda v. Arizona*, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

custodial statement, claimed that Alexus rushed into the room and hit him. He explained that he then held Alexus to protect himself because he was concerned that she would get back up and start fighting again. On cross-examination, he admitted that it was possible Alexus was fighting against him because she was trying to find a way to breathe. Watkins claimed he did not notice when Alexus stopped moving.

In closing argument, defense counsel asserted that the evidence showed that the strangulation was accidental and that, if anything, the trial court should convict Watkins of voluntary manslaughter instead of felony murder. The trial court expressly considered and rejected this argument. And, in denying Watkins's motion for new trial, the court again concluded that voluntary manslaughter was not supported by the evidence because Alexus's actions were not such a serious provocation as would be sufficient to excite a sudden, violent, and irresistible passion in a reasonable person.

2. On appeal, Watkins asserts that the trial court erred in

failing to find him guilty of the offense of voluntary manslaughter instead of felony murder.[4] See *Edge v. State*, 261 Ga. 865, 865 (2) (414 SE2d 463) (1992) ("[W]here the jury renders a verdict for voluntary manslaughter, it cannot also find felony murder based on the same underlying aggravated assault.").

"A person commits the offense of murder when, in the commission of a felony, he or she causes the death of another human being irrespective of malice." OCGA § 16-5-1 (c). OCGA § 16-5-2 (a) provides that what would otherwise be murder is the offense of voluntary manslaughter when committed "solely as the result of a

---

[4] Relying on *Harris v. State*, 184 Ga. 382 (191 SE 439) (1937), Watkins also asserts in passing that there was substantial evidence that this was a matter of mutual combat, with both he and Alexus engaged in a fight. Pretermitting whether this claim was preserved for appellate review, Watkins cannot show any error in this regard because there was no evidence that both Watkins and Alexus had a willingness, readiness, and intention to fight. See *Tidwell v. State*, 312 Ga. 459, 463 (1) (863 SE2d 127) (2021) ("[T]he essential ingredient, mutual intent, in order to constitute mutual combat, must be a willingness, a readiness, and an intention upon the part of both parties to fight. Reluctance, or fighting to repel an unprovoked attack, is self-defense, and is authorized by the law, and should not be confused with mutual combat." (citations and punctuation omitted)); *Venturino v. State*, 306 Ga. 391, 398 (3) (830 SE2d 110) (2019) (no error in refusing to charge the jury on mutual combat where defendant's own testimony – in which he claimed self-defense – contradicted theory of mutual combat and there was no other evidence to support such a theory).

sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." "Whether or not a provocation, if any, is such a serious provocation as would be sufficient to excite a sudden, violent, and irresistible passion in a reasonable person, reducing the offense from murder to manslaughter, is generally a question for the [trier of fact]." *Thomas v. State*, 311 Ga. 573, 575-76 (1) (858 SE2d 504) (2021) (citation and punctuation omitted).

Here, Watkins argues that the evidence compelled the trial court to find him guilty of voluntary manslaughter, rather than felony murder, because he and his mother testified that Alexus hit him first. Watkins also points to his testimony that Alexus made him "mad" and that he continued holding Alexus "to protect [him]self." Although he concedes that determining the credibility of the witnesses was within the trial court's discretion as the finder of fact, Watkins nonetheless asserts that there was no significant evidence that his witnesses were adequately impeached. This argument misunderstands this Court's role. "[W]e do not reweigh

8

the evidence," and "we leave to [the trier of fact] the resolution of conflicts or inconsistencies in the evidence, credibility of witnesses, and reasonable inferences to be derived from the facts." *Clark v. State*, 309 Ga. 473, 477-78 (847 SE2d 364) (2020) (citations and punctuation omitted).

Notwithstanding Latoya's trial testimony, her statement to law enforcement officers just after the incident indicated that Alexus stepped in and grabbed Watkins in order to defend Latoya. Similarly, Watkins's original statement to Investigator Baker indicated that Alexus grabbed him to stop him from fighting with their mother. The trial court was authorized to credit these witnesses' prior inconsistent statements and reject portions of their trial testimony. See *Agee v. State*, 311 Ga. 340, 343 (1) (857 SE2d 642) (2021) ("A prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is admissible as substantive evidence." (citation and punctuation omitted)); *State v. Hinton*, 309 Ga. 457, 462 (2) (847 SE2d 188) (2020) ("The trier of fact is not obligated to believe a witness even if the testimony is

uncontradicted and may accept or reject any portion of the testimony." (citation and punctuation omitted)).

Moreover, we have held in the context of considering whether the jury should have been charged on voluntary manslaughter that "[t]he voluntary manslaughter statute establishes an objective standard; the provocation required to mitigate malice is that which would arouse a heat of passion in a *reasonable* person." *Johnson v. State*, 297 Ga. 839, 842 (2) (778 SE2d 769) (2015) (citation and punctuation omitted; emphasis in original). This Court has consistently held that evidence of a defendant's anger and frustration caused by an antagonistic relationship with the victim, even to the extent the relationship involved physical confrontations, is generally not sufficient to show even the slight evidence necessary to require a jury charge on voluntary manslaughter. See id. at 843-44 (2) (recounting this Court's holdings that have affirmed the rejection of a voluntary manslaughter charge, including cases involving arguments over money, past acts of violence, ongoing marital difficulties, and laughter and derision at the defendant's

10

expense); *Davis v. State*, 312 Ga. 870, 874 (2) (866 SE2d 390) (2021) ("Even slight evidence showing that the victim seriously provoked the defendant requires the trial court to give a requested charge on voluntary manslaughter." (citation and punctuation omitted)). It follows that, if evidence that Alexus made Watkins mad would not be sufficient to require a jury to be charged on voluntary manslaughter, it is also not sufficient to compel the trial court, sitting as the trier of fact, to find Watkins guilty of voluntary manslaughter instead of felony murder.

Although Watkins testified that he continued to hold Alexus to protect himself, we have explained that "acting out of fear is not the same as acting in the heat of a sudden irresistible passion." *Thompson v. State*, 312 Ga. 254, 258 (2) (862 SE2d 317) (2021) (citation and punctuation omitted). See also *Smith v. State*, 296 Ga. 731, 737 (3) (770 SE2d 610) (2015) ("[N]either fear that someone is going to pull a gun nor fighting are the types of provocation which demand a voluntary manslaughter charge."). Under the circumstances of this case, we conclude that the trial court, acting

11

as the finder of fact, was authorized to reject Watkins's request to find him guilty of voluntary manslaughter and instead to find Watkins guilty beyond a reasonable doubt of felony murder. See *Bailey v. State*, 301 Ga. 476, 480 (IV) (801 SE2d 813) (2017) ("[I]t is of no moment whether the provocation was sufficient to excite the deadly passion in the particular defendant." (citation and punctuation omitted)); *Thomas v. State*, 274 Ga. 479, 481 (2) (554 SE2d 470) (2001) (affirming murder conviction where the trial court, sitting as factfinder, considered offense of voluntary manslaughter but determined "the facts and circumstances of the case did not warrant or support a conviction for that crime").

*Judgment affirmed. All the Justices concur, except Colvin, J., disqualified.*