NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: October 1, 2024

S24A1152. DEPRIEST v. THE STATE.

BETHEL, Justice.

Darnell Cory Depriest was convicted of felony murder and other crimes in connection with the shooting death of his cousin Ivan Lovejoy Williams.[1] On appeal, Depriest contends that the evidence

---

[1] The crimes occurred on October 11, 2019. On January 3, 2020, a Newton County grand jury indicted Depriest for malice murder (Count 1), felony murder (Counts 2 and 3), aggravated assault (Count 4), possession of a firearm during the commission of a felony (Counts 5 and 6), possession of a firearm by a convicted felon (Count 7), and cruelty to children in the third degree (Count 8). At a September 2021 jury trial, the jury found Depriest not guilty of malice murder, but guilty of all remaining counts. The trial court sentenced Depriest to serve life in prison on Count 2; five years in prison on Count 5, to run consecutively to Count 2; five years in prison on Count 7, to run concurrently with Count 2; and twelve months in prison on Count 8, to run concurrently with Count 2. Though the trial court purported to merge for sentencing purposes all the remaining counts, Count 3 was actually vacated by operation of law. See *Noel v. State*, 297 Ga. 698, 700 (2) (777 SE2d 449) (2015).

Depriest filed a timely motion for new trial, which was later amended through new counsel. Following a hearing on May 24, 2023, the trial court denied the amended motion on January 29, 2024. Depriest then filed a timely notice of appeal, and his case was docketed to the August 2024 term of this Court and submitted for a decision on the briefs.

presented at trial was insufficient to support his conviction for felony murder both as a matter of constitutional due process and under Georgia statutory law. He also argues that trial counsel rendered ineffective assistance by failing to file a motion for immunity from prosecution and that the trial court erred by denying his request to charge the jury on defense of others. But the evidence was sufficient to sustain Depriest's conviction, trial counsel was not deficient in failing to file a motion for immunity, and any error in the trial court's refusal to instruct the jury on defense of others was harmless. So we affirm.

1. Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following. Around midnight on October 11, 2019, emergency personnel responded to a 911 call regarding a shooting at Depriest's residence. Upon arriving, officers found Williams, who had been shot in the head, inside the residence. Also at the scene were Depriest, Depriest's sister Denise Williams, and Depriest's fiancée Tiffany Beatty. Denise and Beatty both observed the events leading to Williams's death and were

interviewed by officers at the crime scene; their interviews were audio-recorded by an investigator and played for the jury at trial.

During her interview, Beatty stated that she was asleep in an upstairs bedroom when she heard Depriest and Williams, who had been drinking alcohol, arguing downstairs. Depriest then came into Beatty's bedroom "screaming" that Williams would not leave and asked Beatty to talk to Williams. Beatty went downstairs, where Williams explained that he would not leave because Depriest owed him money. The men continued arguing, and Beatty positioned herself between them. Beatty then saw that Depriest had a gun, and she tried to convince him to give the gun to her. Depriest eventually removed the magazine and handed the magazine to Beatty but "he never put the gun down." At some point, Williams "charged" toward Beatty and Depriest, and the gun, which was still in Depriest's hand "went off." Beatty explained that she had her back turned to Depriest, who was behind her, when the gun went off.

For her part, Denise, who observed the confrontation from an adjoining room, told investigators that Depriest and Williams began

3

arguing about money, with Williams claiming that Depriest owed him $150. Depriest asked Williams to leave, but Williams refused, and the two argued back and forth. After Williams "walked up on" Depriest and pointed his finger at him, Depriest walked away and returned with a gun. Depriest then went upstairs to get Beatty, who came downstairs with Depriest and positioned herself between the men, trying to break them up. When Depriest gave Beatty the magazine from his gun, Beatty said to Denise, "I got the clip." Then, Williams "was like getting ready to charge" or "go into him to charge" Depriest, and "the next thing [Denise] kn[e]w, the gun went off." Before the gunshot, Denise "saw [Depriest] aim the gun, then [she] heard the gun go off, and [Williams] fell to the ground." Beatty was clear that she saw Depriest point the weapon at Williams before she heard the gunshot.

The investigator then asked both women to describe the physical positions of Depriest, Williams, and Beatty in the room. As Denise described the scene, Depriest, Beatty, and Williams were each some feet apart. The women agreed that only Depriest was

4

armed during the altercation. Testing showed that Beatty did not have any blood on her clothes or person. A crime scene investigator later testified that if someone were standing within a foot of Williams, who was shot in the head, blood would very likely be found on that person.

Depriest was arrested at the crime scene, and police also recovered the gun used in the shooting. Later testing on the gun revealed that the trigger-pull required approximately six-and-a-quarter pounds of pressure, that the gun had a tendency not to fire when the trigger was pulled, and that the gun misfired (i.e., did not fire at all) on four of seven attempted shots.

Both Beatty and Denise later testified at trial. Both women testified that Williams was unarmed at the time of the shooting, and Beatty's testimony was consistent with her interview at the crime scene. Denise, however, recounted a somewhat different version of events than what she told investigators on the night of the crimes. Specifically, Denise testified that Williams, who was "angry" and "very aggressive," started walking over to Depriest "like he was

5

going to hurt him" as Depriest handed Beatty the magazine from his gun. Denise testified that she saw Depriest and Beatty bend down and, as they were standing back up, heard the gun go off; she then saw Williams fall to the floor.

Depriest's theory of defense at trial was that he accidentally shot Williams or, alternatively, that he acted in self-defense after Williams charged at him. Depriest did not testify. Neither did he call any witnesses or seek to enter any other evidence for the defense.

2. In his first enumeration of error, Depriest contends that the evidence presented at trial was insufficient both as a matter of federal constitutional due process and under Georgia statutory law to support his conviction for felony murder.[2] We address these

---

[2] Depriest purports to challenge the sufficiency of the evidence as to all seven counts of which he was found guilty. However, Depriest was not sentenced for one count of felony murder (Count 3), aggravated assault (Count 4), or possession of a firearm during the commission of a felony (Count 6) because those counts merged for sentencing or were vacated by operation of law. Depriest's challenge to the sufficiency of the evidence underlying these counts is therefore moot. See *Eggleston v. State*, 309 Ga. 888, 890-891 (848 SE2d 853) (2020). Further, Depriest's argument on appeal is limited to the assertion that the State failed to prove that he intentionally shot Williams, which implicates only his conviction for felony murder predicated on aggravated assault (Count 2). Our analysis is likewise limited to that conviction. See Supreme Court Rule 22.

arguments in turn.

(a) Depriest contends that the evidence at trial was insufficient as a matter of constitutional due process to prove that he intentionally shot Williams. When assessing evidentiary sufficiency as a matter of due process, we ask whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *McIntyre v. State*, 312 Ga. 531, 531 (1) (863 SE2d 166) (2021) (quoting *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979)). "This Court does not reweigh evidence or resolve conflicts in testimony" but rather "defer[s] to the jury's assessment of the weight and credibility of the evidence." Id. (citation and punctuation omitted).

In support of this argument, Depriest points to what he characterizes as "undisputed" evidence showing that he removed the magazine from the gun, that the gun was prone to misfiring, that Williams "charged up" on Beatty and Depriest, and that there was a struggle before the gun "went off." And although Denise testified

at trial that the gun "went off" after Williams charged at Depriest and Beatty, offering some support for Depriest's theories of defense, her statement to investigators immediately after the shooting supported the State's theory that Depriest acted intentionally in shooting Williams. As discussed above, Denise stated during that interview that the men were some feet apart when she saw Depriest aim and point the gun at Williams before she heard the gunshot. And the jury was authorized to credit Denise's prior statements and reject her inconsistent trial testimony. See *Watkins v. State*, 313 Ga. 573, 576-577 (2) (872 SE2d 293) (2022); *State v. Hinton*, 309 Ga. 457, 462 (2) (847 SE2d 188) (2020) ("The trier of fact is not obligated to believe a witness even if the testimony is uncontradicted and may accept or reject any portion of the testimony." (citation and punctuation omitted)). See also *Ward v. State*, 316 Ga. 295, 298 (2) (888 SE2d 75) (2023) ("the testimony of a single witness is generally sufficient to establish a fact"). Moreover, additional evidence at trial similarly undermined Depriest's claims of accident and self-defense. The absence of blood spatter on Beatty's clothes or person authorized

8

the jury to conclude that Beatty, who was standing between Depriest and Williams, was some distance away from Williams when he was shot. And evidence showing that Depriest's gun had a trigger pull of six-and-a-quarter pounds and was prone *not* to fire when the trigger was pulled authorized the jury to conclude that the gun did not just go off but instead that Depriest intentionally pulled the trigger. See *Bennett v. State*, 304 Ga. 75, 797 (1) (822 SE2d 254) (2018) (jury is free to disbelieve evidence that defendant acted accidentally or in self-defense). In sum, the evidence recounted above was sufficient as a matter of constitutional due process to authorize a rational jury to conclude that Depriest intentionally shot Williams and, accordingly, to find him guilty of felony murder predicated on aggravated assault.

(b) Depriest also asserts that the evidence against him was insufficient under OCGA § 24-14-6 because, he says, the State's proof that he intentionally assaulted Williams was based solely on circumstantial evidence that failed to exclude "every other reasonable hypothesis save that of the guilt of the accused." See

9

OCGA § 24-14-6 ("To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."). But, contrary to Depriest's argument, the State's evidence of his intentional conduct was not based solely on circumstantial evidence. Denise, who was an eyewitness to the crimes, stated that Depriest aimed and pointed his gun at Williams before firing. This was direct evidence of Depriest's intentional conduct. See *Bradley v. State*, 318 Ga. 142, 144 (1) (897 SE2d 428) (2024) (because conviction was not based solely on circumstantial evidence but also on eyewitness testimony, circumstantial evidence statute did not apply to sufficiency analysis); *Gittens v. State*, 307 Ga. 841, 843 (1) n.2 (838 SE2d 888) (2020) ("Eyewitness testimony based on the witness's firsthand observations of the crime is direct, not circumstantial, evidence."). "And if there is any direct evidence presented by the State, the circumstantial evidence statute does not apply in a sufficiency analysis." *Maynor v. State*, 317 Ga. 492, 498 (2) (b) (893 SE2d 724)

(2023) (citation and punctuation omitted). Accordingly, Depriest's statutory sufficiency claim fails.

3. Depriest next argues that he received ineffective assistance when trial counsel failed to file a pretrial motion for immunity from prosecution based on self-defense. See OCGA § 16-3-24.2 (granting immunity to person who uses deadly force in self-defense). We disagree.

To demonstrate this his trial counsel rendered constitutionally ineffective assistance, Depriest

> must prove both that his attorney's performance was professionally deficient and that the deficiency resulted in prejudice to his case. See *Strickland v. Washington*, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). To establish deficient performance, [an] [a]ppellant must show that his counsel's acts or omissions were objectively unreasonable, considering all the circumstances at the time and in the light of prevailing professional norms. To establish prejudice, an [a]ppellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. This burden, though not impossible to carry, is a heavy one.

*Blackmon v. State*, 302 Ga. 173, 175 (2) (805 SE2d 899) (2017) (citations and punctuation omitted). To succeed on a pretrial

11

immunity motion pursuant to OCGA § 16-3-24.2, trial counsel would have had to show by a preponderance of the evidence that Depriest acted in self-defense. See *Goodson v. State*, 305 Ga. 246, 250-251 (2) (c) (824 SE2d 371) (2019).

Here, trial counsel testified at the motion for new trial hearing that, while there was enough evidence to raise a justification defense at trial, the evidence supporting such a defense was "conflicting" and not "clear-cut," such that a pre-trial motion for immunity was unlikely to succeed. Trial counsel further testified as to her belief that some of the State's witnesses may have been unavailable for trial and that, by testifying at a hearing on an immunity motion, their testimony would be preserved for later use at trial. Trial counsel's reasoning was sound, and her decision not to file an immunity motion on these bases was reasonable. See *Broxton v. State*, 306 Ga. 127, 138 (5) (a) (829 SE2d 333) (2019); *Dent v. State*, 303 Ga. 110, 119 (4) (d) (810 SE2d 527) (2018). Depriest has failed to show that his counsel's strategic decisions were so unreasonable that no competent attorney would have made them, and therefore

he has failed to establish that his trial counsel performed deficiently.

Further, the evidence discussed above, particularly Denise's statement to investigators that Depriest aimed his gun at the unarmed Williams before shooting him, significantly undermined Depriest's claim of self-defense. And in light of that evidence, "there was little chance that an immunity motion would have been granted." *Russell v. State*, ___ Ga. ___ (3) (___ SE2d ____) (Case No. S24A0565, Aug. 13, 2024); *Goodson*, 305 Ga. at 251 (2) (c). Further, the jury's finding of guilt, based on the sufficient evidence outlined above, indicates that a motion for pretrial immunity would not have been granted as a matter of law, and consequently Depriest cannot show that the outcome would have been different had counsel filed the motion. Accordingly, Depriest also cannot show that trial counsel's failure to pursue the motion prejudiced him, and his claim of ineffective assistance fails.

4. Lastly, Depriest argues that the trial court erred by denying his request to charge the jury as to defense of others because, he says, "[e]vidence was presented to support the idea that [Williams]

13

could also have intended to harm [Beatty]."[3]  Assuming without deciding that the trial court erred in this respect, we conclude that any such error was harmless.

We begin by noting that "[t]o authorize a jury instruction, there need only be slight evidence supporting the theory of the charge." *Wainwright v. State*, 305 Ga. 63, 70 (5) (823 SE2d 749) (2019). "Whether the evidence presented is sufficient to authorize the giving of a jury charge is a question of law," *Gray v. State*, 319 Ga. 72, 75 (2) (901 SE2d 556) (2024) (cleaned up), and "[w]e review de novo a properly preserved claim that a trial court erred in refusing to instruct the jury on an applicable principle of law." *Eubanks v. State*, 317 Ga. 563, 581 (3) (b) (894 SE2d 27) (2023) (citation and punctuation omitted). But as we have explained, "[e]ven when we find error in a jury charge, we will not reverse when the error is harmless. The test for determining whether a nonconstitutional instructional error was harmless is whether it is highly probable

---

[3] At trial, Depriest requested that the court instruct the jury on the defense of others. The trial court declined but noted Depriest's objection for the record.

14

that the error did not contribute to the verdict." *Gray*, 319 Ga. at 75 (2) (cleaned up). Such is the case here.

As we have already recounted above, the evidence showing that Depriest intentionally shot Williams was strong. By contrast, any evidence that Depriest acted in defense of Beatty was exceedingly slight. Specifically, Depriest points to evidence that Beatty broke a bottle of liquor, causing Williams to become angrier. But Williams was unarmed during the entire altercation. And as the trial court reasoned in rejecting this argument below, although Beatty purposely inserted herself between the two men while they argued, none of Williams's actions were directed toward Beatty, and Williams did not otherwise threaten her. Our law makes clear that the use of deadly force to defend oneself or another person is justified only if a person "reasonably believes that such force is necessary to prevent death or great bodily injury . . . or to prevent the commission of a forcible felony." OCGA § 16-3-21 (a). See also OCGA § 16-1-3 (6) (defining "forcible felony" as "any felony which involves the use or threat of physical force or violence against any person"). The

evidence Depriest highlights in support of this argument does not suggest that Beatty was in such danger that Depriest "reasonably" believed it was necessary to fire his gun at Williams. Moreover, the jurors were properly instructed on the law of justification, and they apparently disbelieved the only evidence that would suggest a threat to Beatty – that is, the testimony that Williams charged toward Depriest and Beatty – as they rejected Depriest's claim that he acted in self-defense, making it highly probable that they also would have rejected a claim that he acted to defend Beatty, who inserted herself into the men's altercation and was not the target of Williams's aggression. For these reasons, we conclude that it is highly probable that the trial court's decision not to charge the jury on defense of others did not contribute to the jury's verdict. Accordingly, any possible error was harmless. See *Jones v. State*, 310 Ga. 886, 889 (2) (855 SE2d 573) (2021) (any error in failing to charge jury on defense of self or third person was harmless because "evidence supporting a charge on defense of self or a third person . . . was meager at best"); *Calmer v. State*, 309 Ga. 368, 372-373 (2) (c) (846 SE2d 40) (2020)

16

("any weak evidence that [the defendant] acted to prevent death or great bodily injury to himself is wholly undercut by other evidence to the contrary" and, thus, any error in refusing to charge jury on self-defense was harmless).

*Judgment affirmed. All the Justices concur.*