**FIRST DIVISION
BARNES, P. J.,
GOBEIL and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**February 24, 2025**

# In the Court of Appeals of Georgia

A24A1657. GALVEZ v. THE STATE.

GOBEIL, Judge.

Billy Milton Galvez was charged with malice murder and other crimes related to the shooting death of Alejandro Ramirez. A Gwinnett County jury found him guilty of voluntary manslaughter, aggravated assault, and possession of a firearm during the commission of a felony. On appeal from the denial of his amended motion for new trial, Galvez argues that the trial court erred (1) by overruling his demurrer, in which he challenged the sufficiency of the indictment as to one of the aggravated assault charges; and (2) in its instructions to the jury on the definition of aggravated assault. For the reasons explained more fully below, we affirm.

The record shows that on July 5, 2020, Albert Hernandez, a detective with the Norcross Police Department, responded to a call at the Fusion Event Hall ("Fusion") at approximately 5:00 a.m. When he arrived, he observed a man, later identified as Ramirez, lying on the ground while bystanders attempted to provide aid. Ramirez, who was still alive at the time, had been shot twice.

Jennifer Cardona-Rodriguez, Galvez's then-girlfriend, was with him on July 4, 2020. Cardona-Rodriguez, Galvez, and a friend, Jorge Avila, spent time together that evening, and the three consumed alcohol and eventually drove to the woods to "have [their] own" Fourth of July celebration. While in the woods, the group took turns firing Galvez's handgun. After drinking an entire bottle of tequila, the group traveled to Fusion.

Although Cardona-Rodriguez was heavily intoxicated, she recalled being involved in an altercation with Ramirez at Fusion at some point in the early morning hours of July 5, 2020. According to Cardona-Rodriguez, as she was walking out of Fusion with Avila to look for Galvez, Ramirez shoved her to the ground. She was upset that Galvez was not there to defend her, and she and Avila went back to Avila's truck, where Galvez was waiting in the driver's seat. Galvez drove away from the

2

scene, but drove back to Fusion after he and Cardona-Rodriguez continued to argue. When they arrived, Avila saw Galvez grab his gun and shoot Ramirez. Avila recalled that Galvez fired seven or eight shots. Cardona-Rodriguez did not see the shooting because she had closed her eyes, but she heard gun shots, and then she felt the truck drive away. Alvila later spoke to Galvez about what happened that night, and Galvez expressed regret and admitted that he "f**ked up." Ramirez ultimately died as a result of his gunshot wounds.

Investigators discovered eight 9-millimeter cartridge casings in the Fusion parking lot. Law enforcement conducted interviews with Cardona-Rodriguez and Alvila, and subsequently arrested Galvez. Galvez was charged by indictment with malice murder (Count 1), felony murder (Count 2), two counts of aggravated assault (Counts 3 and 4), and three counts of possession of a firearm during the commission of a felony (Counts 5, 6, and 7). As relevant here, Count 2 charged Galvez with felony murder predicated on the offense of aggravated assault by shooting the victim. Count 3 of the indictment charged Galvez with committing aggravated assault by shooting

the victim with a deadly weapon.[1] Count 6 charged Galvez with possessing a firearm while committing aggravated assault as outlined in Count 3.

Galvez filed a general demurrer, arguing that the indictment failed to sufficiently charge him with aggravated assault. The trial court conducted a hearing on the demurrer, at which Galvez contended in pertinent part that in Count 3 of the indictment, the State failed to specify whether Galvez had assaulted the victim by committing a violent injury upon him or by committing an act which placed the victim in reasonable apprehension of immediately receiving a violent injury. In a consolidated order on all pre-trial motions, the trial court denied Galvez's demurrer.

After a trial, Gwinnett County jury found Galvez guilty on Counts 3 and 6. With respect to Count 2, the jury found Galvez not guilty of felony murder, but guilty of the lesser-included offense of voluntary manslaughter. Galvez was acquitted on the remaining counts. Galvez filed a motion for new trial, as amended. The trial court denied the motion for new trial after a hearing, and this appeal followed.

1. Galvez first argues that the trial court erred by overruling his demurrer to the indictment. Specifically, he points out that in Count 3 of the indictment, the State

---

[1] Count 4 of the indictment charged him with committing aggravated assault by pointing a firearm at the victim's head.

failed to specify which of the two possible methods Galvez employed in committing simple assault as an element of aggravated assault. This argument is unavailing.

> [T]he purpose of an indictment is to enable the defendant to prepare his defense intelligently and to protect him from double jeopardy. And an indictment is technically correct and sufficient if it states the offense in the terms and language of the Code or in language so plain that the jurors understand the nature of the charged offense.

*Issa v. State*, 340 Ga. App. 327, 334 (3) (796 SE2d 725) (2017) (citations and punctuation omitted). To that end,

> the true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.

Id. at 334-335 (3) (citation and punctuation omitted).

In this case, Count 3 of the indictment charged Galvez with aggravated assault with a deadly weapon by "mak[ing] an assault upon the person of Alejandro Ramirez with a deadly weapon, to wit: a handgun, by shooting the victim with a firearm[.]"

These allegations essentially track the language of OCGA § 16-5-21 (a) (2), which provides in relevant part that a person commits aggravated assault when he "assaults . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." By tracking the language of the statute, the State "presented a technically correct allegation." *State v. Austin*, 297 Ga. App. 478, 479 (677 SE2d 706) (2009). Accordingly, because the indictment was "substantially in the language of the Code[, it was] sufficient in form and substance." Id. at 480 (citation, punctuation and emphasis omitted).

With respect to Galvez's argument that the indictment was void because it failed to allege the specific manner in which he committed simple assault, — i.e., that he attempted to commit a violent injury to the person of another or that he committed an act which placed another in reasonable apprehension of immediately receiving a violent injury — this contention is without merit. Indeed, our Supreme Court has addressed this very argument and has explained that "[i]t is not necessary that an indictment charging a defendant with aggravated assault specify the manner in which the simple assault was committed, but it must set forth the aggravating aspect." *Chase*

*v. State*, 277 Ga. 636, 638 (1) (592 SE2d 656) (2004). Here, the indictment alleged that Galvez had assaulted the victim, and that the assault was aggravated by Galvez's use of a handgun. In sum, because the indictment in this case "used the language of the statute, included the essential elements of the offense, and was sufficiently definite to advise [Galvez] of what he must be prepared to confront, it was not void." *Issa*, 340 Ga. App. at 335 (3) (citation and punctuation omitted). Given the foregoing, the trial court did not err by overruling Galvez's demurrer to the indictment.

2. Galvez also contends that his conviction on Count 3 should be reversed because the trial court erred when it instructed the jury that simple assault could be committed in either of two methods, when neither method was charged in the indictment. We discern no reversible error.

At the charge conference, defense counsel objected to the proposed instruction on simple assault. The trial court then instructed the jury on aggravated assault and simple assault as follows:

> For aggravated assault, the State must prove that the defendant assaulted another person with a deadly weapon. To prove assault, the State does not have to prove that the other person was actually injured.

A firearm, when used in a way a firearm is ordinarily used, is a deadly weapon.

A person commits simple assault when the person attempts to commit a violent injury to the person of another or commits an act that places another in reasonable apprehension of immediately receiving a violent injury. Such an assault is an act that places another in reasonable apprehension or fear of immediately receiving a violent injury. If there is a demonstration of violence with an apparent ability to inflict injury so as to cause a person against whom it is directed to reasonably fear the injury, then the assault is complete, even though the assailant may never have been within striking distance.

After the jury retired to deliberate, defense counsel renewed his objection to the jury instructions.

As an initial matter, it is axiomatic that appellate courts review the trial court's charge to the jury as a whole "to determine whether the jury was fully and fairly instructed on the law of the case." *Manning v. State*, 303 Ga. 723, 728 (4) (814 SE2d 730) (2018). Here, the trial court instructed the jury that the "burden of proof rests upon the State to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt." The trial court also sent the indictment (which, as noted above, alleged that Galvez committed aggravated

assault in Count 3 by shooting the victim with a firearm) out with the jurors for their deliberation. Accordingly, the trial court cured any defect in the charge by "provid[ing] the jury with the indictment and instruct[ing] the jury that the State was required to prove every material allegation in the indictment and every essential element of the crime charged beyond a reasonable doubt." *Simpson v. State*, 302 Ga. 875, 877 (2) (808 SE2d 718) (2017).

Furthermore, the jury did make the requisite finding that Galvez shot the victim, given that proof of a shooting was required for the jury to convict Galvez of voluntary manslaughter, which, as the trial court instructed the jury, required the jury to find that Galvez "caused the death of [the victim.]" In other words, though the jury was not explicitly instructed that it must find that Galvez shot the victim in order to convict him of aggravated assault as charged in Count 3, the jury did *in fact* make such a finding when it found him guilty of voluntary manslaughter. *Lyons v. State*, 309 Ga. 15, 19-21 (3) (843 SE2d 825) (2020).

When viewed as a whole, the jury charges in this case did not impermissibly broaden the manner in which the jury could convict Galvez of aggravated assault, nor did it relieve the State of its burden of proving that Galvez shot Ramirez in order for

the jury to find Galvez guilty of that crime. Accordingly, any possible error in the trial court's jury instructions was harmless, and we affirm the court's denial of Galvez's amended motion for new trial. *Depriest v. State*, 319 Ga. 874, 881 (4) (907 SE2d 274) (2024).

*Judgment affirmed. Barnes, P. J., and Pipkin, J., concur.*