308 Ga. 438
FINAL COPY

S20A0202.  HATNEY v. THE STATE.

ELLINGTON, Justice.

Following a jury trial, Cornelius Hatney was convicted of felony murder predicated on aggravated assault in connection with the beating death of Etate Essang. Hatney appeals, contending that the trial court erred in refusing to give a requested jury instruction on voluntary manslaughter as a lesser offense of the charges of malice murder and felony murder. For the reasons set forth below, we affirm Hatney's conviction.[1]

---

[1] The crimes occurred on October 10, 2008. On May 1, 2009, a Lowndes County grand jury returned an indictment charging Hatney with malice murder, felony murder (predicated on aggravated assault), and aggravated assault. Following a jury trial ending on August 3, 2010, Hatney was found not guilty of malice murder and guilty of felony murder and aggravated assault. The trial court sentenced Hatney to life imprisonment for felony murder. The sentencing order indicated that aggravated assault merged with the felony murder conviction. On August 31, 2010, Hatney filed a timely motion for a new trial, which he amended on February 25, 2016. Following a hearing on September 16, 2016, the trial court denied Hatney's motion for a new trial on July 21, 2017, and Hatney filed a timely notice of appeal. The case was docketed in this Court for the term beginning in December 2019 and orally argued on January 16, 2020.

Viewed in the light most favorable to the verdict,[2] the evidence presented at trial showed the following. On October 10, 2008, an inmate who was in the day room at Valdosta State Prison saw Hatney — who was known as "Little Swoll" because of his size and build — Essang, and a few other inmates go into a cell on the lower level of the split-level dormitory. The inmate heard sounds of a scuffle emanating from the cell. After a few minutes, it got quiet. Then Hatney dragged Essang out of the cell by his feet; Essang was wrapped in a sheet. Hatney dragged Essang up the steps to the day room, laid him down and, while wearing boots, jumped on his head. Hatney repeatedly kicked Essang in the head and hit him in the head several times with a garbage can lid. Throughout this attack, according to several inmates, Hatney screamed, "he was jacking on me." At trial, an inmate explained that the term "jacking" means masturbating.

After hearing a loud noise, a correctional officer went to

---

[2] See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

investigate. When he entered the dormitory, he saw Hatney kicking Essang, who was lying face down on the floor, motionless. Hatney yelled to the officer, "he was jacking on me." The officer ordered Hatney to stop kicking Essang, and he put himself between the two inmates. The officer called for backup and medical assistance. When other officers arrived, Hatney submitted to being handcuffed.

One of the officers responding to the call for backup brought a video camera and recorded the events as a nurse checked on Essang's condition. Essang's feet were tied with a piece of towel, and his hands were tied with strips of a sheet. When the staff rolled Essang's body over, his face "looked like hamburger," as described by one officer. The shift supervisor noticed that Essang's eyes were out of alignment, suggesting that he had sustained serious head trauma, so the supervisor called for an ambulance and directed staff members to take Essang to the infirmary. Medical staff found that Essang had several deep vertical cuts on his back and buttocks.

Three officers escorted Hatney to the segregation unit. One of the officers walked behind Hatney and used the video camera to

record Hatney's behavior en route. The video-recording was played at trial, and all three officers testified regarding Hatney's statements. The video-recording shows that Hatney spontaneously told the officers that he "did it" because Essang was "trying to jack his d*ck off me." Hatney said that the incident began when he caught Essang spying on him in the shower. Hatney stated that he pulled back the shower curtain and demanded to know what Essang was doing. According to Hatney, Essang responded, "You know what I'm doing. . . . I'm going to try you on some gay sh*t." Hatney stated that he told Essang to "stay right there," put on his boots,[3] knocked Essang out with one punch, tied him up, and dragged him "up and down" the steps. An officer asked how Essang got the cuts on his back side, and Hatney said the cuts probably came from him dragging Essang across the sharp edge of the steps and over railings. Hatney volunteered repeatedly that he beat Essang because Essang was "jacking" on him, and Hatney was not "about [any] homosexual

---

[3] Hatney did not specify when he got dressed after showering, but the video recording shows that he was dressed when the first correctional officer intervened.

stuff." He likened Essang's conduct to an attempted sexual assault. Hatney said he "straighten[ed] him out," and "did it for all the young folks" that might come into the prison so that, if Essang, who was over six feet tall, lived, he would never again "try [anybody who was] weak" or "short" with any "gay sh*t," because he would know that they "might do how Little Swoll did." Hatney claimed that he was also showing the rest of the inmates that they should not disrespect him like Essang had done. After being advised of his *Miranda*[4] rights, Hatney agreed to answer questions; he continued to insist that "he did it because the dude was jacking on him."

After a month in the hospital, Essang succumbed to his injuries and died from complications of blunt force trauma to the head. Hatney was charged with committing malice murder, felony murder, and aggravated assault by striking Essang with a trash can lid and kicking Essang with his feet, "objects which when used offensively against a person, in the manner then and there used,

---

[4] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

[are] likely to result in serious bodily injury[.]"[5]

1. Hatney does not challenge the sufficiency of the evidence. Nevertheless, as is our customary practice in murder cases, we have independently reviewed the record and conclude that the evidence presented at trial was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that he was guilty of felony murder. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

2. Hatney contends that the trial court erred when it refused to give a requested pattern jury instruction on voluntary manslaughter as a lesser offense of both malice murder and felony murder predicated on aggravated assault. Voluntary manslaughter is the killing of another person under circumstances that would otherwise be murder when the killer

> acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person;

---

[5] See OCGA § 16-5-21 (a) (2) (A person commits the offense of aggravated assault when he or she assaults "with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury[.]").

however, if there should have been an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, of which the jury in all cases shall be the judge, the killing shall be attributed to deliberate revenge and be punished as murder.

OCGA § 16-5-2 (a). A trial court is required to give a requested charge on voluntary manslaughter if there is slight evidence of the elements of OCGA § 16-5-2 (a). See *Keita v. State*, 285 Ga. 767, 770 (2) (684 SE2d 233) (2009).

Hatney contends that he was entitled to a voluntary manslaughter instruction because there was evidence that Essang seriously provoked him and that he killed Essang solely as the result of a sudden, violent, and irresistible passion excited by the provocation. Hatney also argues that the failure to give the instruction likely affected the outcome of his trial. The fact that the jury found him not guilty of malice murder, he contends, shows that the jury did not believe the killing was done with malice, and it is therefore likely, he claims, that, if the jury had been instructed on adequate provocation, the jury would have found him guilty of voluntary manslaughter.

Assuming without deciding that the evidence in this case warranted a jury instruction on voluntary manslaughter, we conclude that any error in failing to give the requested jury instruction was harmless. The test for determining whether a nonconstitutional instructional error was harmless is "whether it is highly probable that the error did not contribute to the verdict. And in determining whether such an error is harmless, we assess the evidence from the viewpoint of reasonable jurors, not in the light most favorable to the verdicts." *Henry v. State*, 307 Ga. 140, 146 (2) (c) (834 SE2d 861) (2019) (citations and punctuation omitted). Even if the jury had found that Essang's conduct in the shower area was enough to provoke a sudden, violent, and irresistible passion in a reasonable person under OCGA § 16-5-2 (a), the evidence presented — including Hatney's own statements immediately after he beat Essang — also showed that a significant period of time elapsed between the alleged provocation and Hatney's extensive beating of Essang in the day room. During that interval, Hatney prepared for the attack by dressing and putting on his boots and by

incapacitating Essang by knocking him out, tying his hands and feet, and wrapping him in a sheet. During that interval, Hatney also moved Essang to multiple locations: into the lower-level cell, out of the cell, "up and down" the steps, and into the day room, where he assaulted Essang by hitting him with a garbage can lid and repeatedly kicking him. See *Barron v. State*, 297 Ga. 706, 708 (2) (777 SE2d 435) (2015) (voluntary manslaughter instruction not warranted where the evidence showed, inter alia, a substantial amount of time between the alleged provocation by the victim, a fellow prison inmate, and the attack, during which interval the defendant went to his cell, had a conversation with his cellmate, located a weapon, and went to find the victim); see also *Stork v. State*, 303 Ga. 21, 22-23 (1) (b) (810 SE2d 81) (2018); *Sears v. State*, 298 Ga. 400, 404 (1) (b) (782 SE2d 259) (2016); *Smith v. State*, 296 Ga. 731, 737-738 (3) (770 SE2d 610) (2015). In addition, Hatney described his motives for the attack to include commanding respect from other inmates and protecting vulnerable inmates from Essang's predations, which are more demonstrative of deliberation

than irresistible passion. Considering all of the evidence, and weighing the evidence and defenses raised by Hatney at trial as we believe reasonable jurors would, we conclude that, if the jury had been instructed on voluntary manslaughter and had found the serious provocation required to reduce murder to voluntary manslaughter, it is highly probable that the jury would also have found an intervening cooling-off period sufficient to preclude a voluntary manslaughter verdict. Accordingly, any error was harmless. See *Noel v. State*, 297 Ga. 698, 701 (3) (777 SE2d 449) (2015).[6]

---

[6] See also *Hinton v. State*, 304 Ga. 605, 607-608 (2) (820 SE2d 712) (2018) (In reviewing a claim of ineffective assistance of counsel, where the evidence of the appellant's guilt of felony murder predicated on aggravated assault was strong, and any evidence supporting a voluntary manslaughter theory was weak, at best, the appellant failed to establish a reasonable probability that the jury would have reached a different result, even if counsel had renewed his request and secured a jury instruction on voluntary manslaughter.); *Blackwell v. State*, 302 Ga. 820, 827 (3) (809 SE2d 727) (2018) (In reviewing a claim of ineffective assistance of counsel, where the evidence of the appellant's guilt of malice murder was strong, any slight evidence supporting a voluntary manslaughter theory was insufficient to establish a reasonable probability that, if counsel had requested and secured a jury instruction on voluntary manslaughter, the jury would have returned a guilty verdict on voluntary manslaughter rather than murder.); *Fuller v. State*, 278 Ga. 812, 814 (2) (b) (607 SE2d 581) (2005) (In reviewing a claim of ineffective assistance of counsel, where the evidence of the appellant's guilt of malice murder was strong, there

3. Hatney contends that the trial court failed to properly merge the sentence for aggravated assault into the sentence for felony murder. This argument lacks merit. The record shows that, although the trial court *verbally* pronounced a sentence for aggravated assault at the sentencing hearing, the trial court's written judgment correctly indicated that aggravated assault merged with felony murder; no sentence was imposed for aggravated assault.

*Judgment affirmed. Melton, C. J., Nahmias, P. J., and Blackwell, Boggs, Peterson, Warren, and Bethel, JJ., concur.*

DECIDED APRIL 6, 2020.
Murder. Lowndes Superior Court. Before Judge Tunison.
*Ian Bucy*, for appellant.
*Bradfield M Shealy, District Attorney, Michelle T. Harrison, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Alex M. Bernick, Assistant Attorney General*, for appellee.

---

was not a reasonable probability that, if the jury had been charged on voluntary manslaughter, the jury would have returned a manslaughter verdict.).