310 Ga. 886
FINAL COPY

S20A1245.  JONES v. THE STATE.

LaGRUA, Justice.

Delaljujuan[1] Jones was tried by a Grady County jury and convicted of murder and other crimes in connection with a shooting that killed Stanley Hill and wounded three others. Jones appeals, contending that the evidence presented at his trial was insufficient to sustain three of his convictions, that the trial court erred when it denied his request to charge the jury on the defense of justification, and that he was denied the effective assistance of counsel when his trial counsel failed to present evidence that Hill and others at the scene of the shooting were members of a gang.[2] Having identified no reversible error, we affirm.

---

[1] Though Jones's first name is spelled "Delajujuwan" in the notice of appeal and some of the briefing in this Court, we use the spelling used in the indictment, Final Disposition, and trial transcript.

[2] Hill was killed on January 17, 2015. On March 23, 2015, a Grady County grand jury indicted Jones, charging him with malice murder, murder in the commission of a felony (aggravated assault), aggravated assault of Hill,

Viewed in the light most favorable to the verdicts, the evidence presented at trial shows the following. On January 17, 2015, Jones and his stepbrother, Alvin Price, along with several others, drove from Havana, Florida to Cairo, Georgia to attend a car show. After the car show, a crowd of attendees gathered in the parking lot of the Cairo Mart gas station to continue the festivities. As one witness described it, "[t]here was a lot of music, dancing, drinking, [and] people showing off their cars."

At one point that evening, an argument broke out among some of the people gathered next to the gas pumps, including Price. Some evidence suggests that this argument arose because Price had been throwing money into the crowd, angering some of the local residents.

aggravated assault of Kentrail Brown, aggravated assault of Shontarius Brown, and aggravated assault of Martravione Moore. Jones was tried in September 2015, and the jury found him guilty on all counts. The trial court sentenced Jones to life in prison without parole for malice murder and three consecutive twenty-year terms of imprisonment for the aggravated assaults of the three surviving victims. The other counts merged or were vacated by operation of law. Jones filed a timely motion for new trial in October 2015, and he amended the motion in July 2019. After a hearing, the trial court denied his motion for new trial in January 2020. Jones timely appealed, and this case was docketed to the August 2020 term of this Court and orally argued in September 2020.

During the ensuing tension, Hill punched Price, and Jones immediately pulled out a gun and fired several shots in Hill's direction. A bystander video-recorded most of the incident on his cell phone, and this video was played at trial.

The video shows a crowd gathered at the gas pumps, with some people arguing, but without much animosity. Less than 30 seconds before the shooting, Price is seen standing in the middle of the crowd, smiling and holding a beer, while engaging in a low-key argument with someone. Jones also appears in the video, standing near Price in a calm manner, not saying anything. As the argument with Price appears to intensify, Hill suddenly comes from the side and punches or shoves Price, who falls back toward Jones. Immediately, Jones pulls out a gun and starts firing at Hill. The camera moves away from the scene as soon as the first shot is fired, but a total of seven shots, in quick succession, are heard on the video. An autopsy revealed that Hill was hit twice. One bullet struck him in the arm, and the other entered his lower abdomen, causing a massive hemorrhage and resulting in his death.

The three other victims — Kentrail Brown, his brother Shontarius Brown, and Martravione Moore — were not involved in the altercation but were struck by stray bullets, and each of them testified at trial. Kentrail testified that he was sitting on the roof of his car, parked next to the Cairo Mart, when he was shot in the thigh. Before the shooting, Kentrail said, he saw a "little" commotion, but "nothing major at the time." Kentrail testified that the shots were coming from the gas pump area.

Shontarius testified that he was standing by Kentrail's car when he was shot in the right foot. Prior to the shooting, Shontarius said, he saw some people arguing, and he specifically noticed Jones because "everybody else was arguing and he was the only one that was calm." Shontarius testified that he did not see Hill or anyone else with a gun that night.

Moore testified that he was standing right beside the gas pumps when he was shot in the thigh. He did not see who shot him, as the whole event happened "so fast." Moore started running as soon as he heard gunshots, but then he collapsed from the gunshot

wound. As he lay on the ground, he heard another series of gunshots, which occurred about 15 minutes after the first.

One of the bystanders, Lakeisha Cooper, also heard two distinct rounds of gunshots. She testified that she was leaning against Kentrail's car when she heard several gunshots, and about two minutes later, she heard more gunshots — "some other dudes [were] shooting in the air." According to Cooper, the second round of gunshots occurred after Hill, Kentrail, and Shontarius had been shot. Cooper also testified that Hill did not have a firearm that night. Another bystander, Nicholas Harden, identified Jones in court as the person who shot Hill and testified that he did not see anyone with a gun that night other than Jones. Crime scene investigators found two bullet fragments near the Cairo Mart store and six shell casings scattered near the gas pumps. All six shell casings were of the same brand and caliber, and no other shell casings were found at the crime scene.

1. Jones first contends that the evidence was insufficient as a matter of Georgia statutory law to sustain his aggravated assault

5

convictions for the shootings of Kentrail, Shontarius, and Moore. Jones argues that those convictions were based on circumstantial evidence and that the State failed to exclude the reasonable hypothesis that other shooters were involved. See OCGA § 24-14-6 ("To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."). We disagree.

Although some evidence suggests that someone other than Jones may have been responsible for the second round of gunfire that occurred minutes after the first, testimony from the three aggravated assault victims, as well as other evidence, indicates that they were shot during the initial round of gunfire and that Jones was solely responsible for that initial round. Among other things, the video reflects that Jones fired the first shot and that six more shots followed in quick succession. All of the shell casings found in the area where Jones was standing were of the same caliber and from the same manufacturer, and there was no evidence indicating

6

that anyone else fired a gun at the same time as Jones. So the jury was free to reject as unreasonable the hypothesis that Kentrail, Shontarius, and Moore were shot by some person other than Jones. See *Willis v. State*, 304 Ga. 781, 783 (1) (822 SE2d 203) (2018) ("[I]t is principally for the jury to determine whether an alternative hypothesis is reasonable."). See also *Graham v. State*, 301 Ga. 675, 677 (1) (804 SE2d 113) (2017) ("[I]t is the role of the jury to resolve conflicts in the evidence and to determine the credibility of witnesses, and the resolution of such conflicts adversely to the defendant does not render the evidence insufficient." (Citation and punctuation omitted.)). Thus, we conclude that the evidence supporting Jones's aggravated assault convictions was sufficient as a matter of Georgia statutory law. And, though Jones does not assert insufficiency of the evidence as a matter of constitutional due process, we also conclude that the evidence presented at trial was sufficient for purposes of constitutional due process to authorize a rational trier of fact to find beyond a reasonable doubt that Jones was guilty of all the crimes of which he was convicted. See *Jackson*

*v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).[3]

2. Jones next contends that the trial court erred when it denied his request to instruct the jury on the defense of justification. Jones specifically identifies three instructions that, he argues, the trial court erroneously failed to provide: that a person may be justified in using force to defend himself or a third person if he reasonably believes such force is necessary; that the State must disprove a justification defense beyond a reasonable doubt; and that a person who is not the aggressor is not required to retreat before using force in self-defense. We need not decide, however, whether the trial court erred when it refused to provide these requested instructions, because any such error was harmless. See *McClain v. State*, 303 Ga. 6, 9 (2) (810 SE2d 77) (2018) ("[T]he failure to give a requested charge which is authorized by the evidence can be harmless error."

---

[3] We remind litigants that, beginning with cases docketed to the term of this Court that begins in December 2020, we will end our practice of considering sufficiency sua sponte in non-death penalty cases. See *Davenport v. State*, 309 Ga. 385, 399 (4) (b) (846 SE2d 83) (2020). This Court began assigning cases to the December term on August 3, 2020.

8

(Citation and punctuation omitted.)). "The test for determining whether a nonconstitutional instructional error was harmless is whether it is highly probable that the error did not contribute to the verdict." *Hatney v. State*, 308 Ga. 438, 441 (2) (841 SE2d 702) (2020) (citation and punctuation omitted).

Here, to the extent there was any evidence supporting a charge on defense of self or a third person, it was meager at best. Our law makes clear that the use of *deadly* force to defend oneself or another person is justified only if a person "reasonably believes that such force is necessary to prevent death or great bodily injury . . . or to prevent the commission of a forcible felony." OCGA § 16-3-21 (a). The jury here saw the video recording depicting Jones opening fire, amidst a crowd of people talking, dancing, and mingling, the moment after Price was shoved or punched. Nothing in the video suggests that either Price or Jones was in such danger that Jones "reasonably" believed it was necessary to immediately fire his gun at Hill, much less to fire it in such a manner as to injure multiple bystanders. And while Jones argues that there was an air of tension

9

between the Florida men and the local residents and that there was some evidence of gang affiliations among members of the crowd, he offers no evidence that he himself observed or perceived any threat, gang-related or otherwise, that would have justified the use of deadly force. Accordingly, it is highly probable that the jury's verdict was unaffected by any error in the trial court's refusal to give all of Jones's requested instructions. See *Calmer v. State,* 309 Ga. 368, 372-373 (2) (c) (846 SE2d 40) (2020) (any error in the trial court's failure to give jury instructions on self-defense and no duty to retreat was harmless where the evidence supporting these instructions was weak); *Hatney,* 308 Ga. at 442 (2) (any error in failure to give requested instruction was harmless where, weighing the evidence as reasonable jurors would, it was highly probable jury would have rejected defense's theory). Accordingly, this claim fails.

3. Lastly, Jones contends that he was denied the effective assistance of counsel when his trial counsel failed to discover and present evidence that Hill and other individuals were gang members. To obtain relief on a claim of ineffective assistance of

counsel, a defendant generally must show both that his counsel's performance was deficient and that this deficient performance prejudiced his defense. See *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). An attorney performs deficiently under *Strickland* if he discharges his responsibilities at trial in an "objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Thomas v. State*, 303 Ga. 700, 702 (2) (814 SE2d 692) (2018) (citation and punctuation omitted). "A strong presumption exists that counsel's conduct falls within the broad range of professional conduct." *Lopez v. State*, 310 Ga. 529, 533 (3) (852 SE2d 547) (2020) (citation and punctuation omitted). Prejudice is shown by demonstrating "a reasonable probability[,] sufficient to undermine confidence in the outcome[,] that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different." *Miller v. State*, 285 Ga. 285, 286 (676 SE2d 173) (2009) (citation and punctuation omitted). "If either *Strickland* prong is not

met, this Court need not examine the other prong." *Palmer v. State*, 303 Ga. 810, 816 (IV) (814 SE2d 718) (2018).

At trial, in her opening and closing remarks, Jones's counsel argued that several people seen in the video standing at the periphery of the crowd and wearing red hoodies were members of the Bloods gang, which presented a threat to Jones and his group. But, aside from testimony that some people at the gathering were flashing gang signals, the defense presented no evidence that any of the attendees was a gang member. In addition, the State countered the defense's argument with evidence that the red clothing merely represented the colors of Cairo High School.

At the motion for new trial hearing, Jones (through new counsel) presented the testimony of a private investigator who was retained after trial by Jones's mother. The investigator testified that she discovered a number of photographs on social media showing Hill posing with other people, wearing red clothes or red bandanas, and making certain hand signs. These photos (16 in total) were introduced into evidence at the hearing. Jones also presented the

testimony of a crime intelligence analyst, who was tendered without objection as an expert on gangs. This witness testified that the red clothing and bandanas and the hand signs seen in the photos showed an association with the Bloods gang; that, in gang culture, if anyone shows disrespect to even a single gang member, the entire gang will "respond in force"; and that a gang member's failure to respond to disrespect, especially in public, will be perceived as a weakness that warrants punishment. On cross-examination, the expert acknowledged that his opinion about Hill's gang affiliation was formed solely from the social media photos and that he had never talked to Jones nor seen the video or any other evidence in the case.

Jones argues that the photographic evidence of Hill's gang membership was necessary to support his defense of justification — to give the jury a full picture of the threat Jones and his associates faced from the crowd gathered at the Cairo Mart and to counter the State's argument that the red clothing seen in the video merely represented the colors of the local high school. However, the mere fact that this evidence might have been marginally helpful in

establishing facts that the defense elicited other evidence to establish is not sufficient to render trial counsel's performance in this regard deficient. "[D]eficiency cannot be demonstrated by merely arguing that there is another, or even a better, way for counsel to have performed." *Davis v. State*, 306 Ga. 140, 144 (3) (829 SE2d 321) (2019).

This is particularly true given that the evidence Jones now claims counsel should have discovered would have offered only minimal additional support for his self-defense theory. No evidence was presented at trial or the motion for new trial hearing that Jones knew Hill or believed that he was a gang member, and there was no evidence showing that any of the people depicted in the photos with Hill were present at the scene of the shooting, that those people were the same individuals seen in the video wearing red clothing, or that the red clothing seen in the video was in fact associated with the Bloods gang. Thus, given the marginal probative value of the photos,

trial counsel cannot be deemed deficient for failing to discover them.[4]

For the same reasons, it is highly unlikely that the evidence in question, even if admitted, would have persuaded the jury that Jones was justified in shooting Hill, and thus Jones has failed to show prejudice. See *Strickland*, 466 U.S. at 694 (III) (B). This enumeration is thus without merit.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 1, 2021.
Murder. Grady Superior Court. Before Judge Lanier.
*Ryan C. Locke*, for appellant.
*Joseph K. Mulholland, District Attorney, Moruf O. Oseni, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Assistant Attorney General*, for appellee.

---

[4] Indeed, it is not clear whether Jones's trial counsel, had she discovered the photos and obtained the expert's opinion, would even have sought to introduce this evidence, or whether, even if she had, the trial court would have admitted it. See, e.g., *Walton v. State*, 303 Ga. 11, 15 (3) (810 SE2d 134) (2018) (trial court did not plainly err in excluding evidence that victim was gang member because "any such affiliation was irrelevant and had no connection to the shooting").