NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: December 19, 2023

S23A0948. JONES v. THE STATE.

WARREN, Justice.

In September 2019, Cynthia Jones ("Cynthia") was convicted of malice murder and related crimes in connection with the February 2018 shooting death of her husband, Kenneth Jones ("Kenneth").[1] She appeals those convictions, contending that the

---

[1] Kenneth was killed on February 1, 2018. On May 1, 2018, a DeKalb County grand jury indicted Cynthia for malice murder, felony murder predicated on aggravated assault, felony murder predicated on possession of a firearm by a convicted felon, aggravated assault, possession of a firearm by a convicted felon, and possession of a firearm during the commission of a felony. On August 9, 2019, a jury found her guilty on all counts. In September 2019, the trial court sentenced her to serve life in prison on the malice murder count, vacated the felony murder counts, merged the aggravated assault count, and sentenced her to five years in prison for each of the firearm possession counts, to serve concurrent with the malice murder count. Cynthia timely moved for a new trial on October 11, 2019. On July 21, 2021, after an evidentiary hearing, the trial court entered an order denying Cynthia's motion for new trial. Cynthia's motion-for-new-trial counsel, however, did not realize the trial court entered that order. Upon discovering entry of the order denying Cynthia's motion for new trial on October 18, 2021, Cynthia moved for an out-of-time appeal on October 25, 2021. The trial court granted Cynthia's motion

trial court committed harmful error by declining to give a jury instruction on self-defense. For the reasons explained below, we affirm.

1. As pertinent to her claim on appeal, the evidence presented at Cynthia's trial showed the following. Cynthia was married to Kenneth, and they had a history of domestic troubles. The Joneses kept a nine-millimeter handgun in their house.

Joy Fife, one of Cynthia's daughters, witnessed some of these troubles. She testified about an altercation she witnessed between the Joneses at their home in 2015 in which Kenneth arrived home intoxicated and began arguing with Cynthia. The argument became "physical," and Kenneth pinned Cynthia to a wall. Fife intervened and freed Cynthia. Meanwhile, Kenneth retrieved the couple's handgun and "wav[ed] it around." Officers from the DeKalb County

for out-of-time appeal on October 25, 2021. She filed a notice of appeal on October 26, 2021. On September 21, 2022, we dismissed Cynthia's appeal and remanded the case to the trial court for action pursuant to *Cook v. State*, 313 Ga. 471 (870 SE3d 758) (2022). She then moved the trial court to vacate and re-enter the order denying her motion for new trial on October 21, 2022. The trial court granted that motion on May 15, 2023. Cynthia timely filed a notice of appeal in this Court on May 15, 2023. The case was docketed to the August 2023 term of this Court, and the case was submitted for a decision on the briefs.

police department responded and charged Kenneth with simple battery.

A DeKalb County police officer responded to another incident at the Jones residence in 2017. That officer testified that Cynthia and Kenneth appeared intoxicated when he arrived at their home. Cynthia's hand was bloodied and there was blood on a broken window. Cynthia told the officer that "domestic violence is real," but would not answer any of the officer's questions. As a result, the officer arrested neither Cynthia nor Kenneth.

Other evidence presented at trial shed light on the Joneses' relationship. One of Cynthia's daughters, Whitney Barrett, testified that she had seen the Joneses push each other. Another of Cynthia's daughters, Tanzia McLendon, testified that she saw Kenneth shove Cynthia once. However, neither Barrett nor McLendon ever saw the Joneses hit, punch, or strike each other. A friend of Cynthia's testified that she noticed marks on Cynthia that she surmised were indicia of physical abuse. And evidence was introduced that in 2016, Kenneth purchased an accidental death life insurance policy

3

insuring his life. As a beneficiary of that policy, Cynthia could have collected up to $55,000 upon Kenneth's accidental death.

Other evidence presented at trial included that Kenneth's cell phone records showed that Cynthia text-messaged Kenneth in 2017: "I regret I married you." Cynthia also text-messaged Kenneth in 2017: "I will never want you again." Additionally, the Joneses' next-door neighbor, Enrique Dent, testified that the Joneses regularly drank alcohol from the bar in Dent's living room. From his living room, Dent heard Cynthia scream, "I'm going to blow his mother f**king brains out" on more than one occasion. Dent also testified that he thought that Cynthia was probably "more aggressive" than Kenneth, although Dent never witnessed physical abuse between the Joneses.

On the evening of February 1, 2018, Dent was watching television in his living room when he heard a "loud thud" resound from the Jones residence. He hurried next door and found Cynthia sitting beside the front door. Dent asked what was wrong, and Cynthia muttered, "I didn't mean to. It was an accident."

4

Cynthia dialed 911 and requested medical attention for Kenneth. She also told the 911 operator that her house had been burglarized. When EMTs arrived, they discovered Kenneth lying face-down in the Joneses' bedroom. However, Cynthia blocked the EMTs from approaching Kenneth's body. After an EMT tried to remove Cynthia from the room, Cynthia attempted to hit that EMT, crying, "b\*\*ch, get the f\*\*k off me." After turning Kenneth over, the EMTs observed a puddle of blood and at least one shell casing under his body. Kenneth later died at the house. An autopsy showed that a gunshot wound caused his death.

As part of their investigation of the crime scene, the police discovered a nine-millimeter handgun and a "crack shooter," or crack pipe, hidden in a laundry basket in the Joneses' bathroom next to their bedroom. A GBI firearms expert testified at trial that the cartridge cases and bullets recovered from the scene were fired from the nine-millimeter handgun found in the laundry basket.

Later that night, Cynthia recounted the evening's events during an interview with a detective at the DeKalb County police

5

headquarters. According to Cynthia, she left her house earlier that day before picking up a "[c]rack rock" and returning to her house. Cynthia acknowledged, "I'm drinking, I'm on alcohol. I'm smoking weed. I'm snorting powder and I smoke [c]rack." After taking "a hit for [c]rack," Cynthia moved the Joneses' handgun from its usual place in a chest-of-drawers to Cynthia's nightstand. Kenneth arrived home and the two began arguing, pushing, and "tussling," but Cynthia did not "remember [a] gun getting involved in that." Cynthia retrieved the gun from the nightstand and exclaimed, "you going to get your f\*\*king hands off me. You don't keep handling me. I'm sick of this bulls\*\*t." Kenneth began "cussing," and the gun "went off," according to Cynthia.

Cynthia recalled that she and Kenneth were across the bed from each other when the shooting occurred. When she "came around the bed, [Kenneth] was on the floor." But she insisted that she "wouldn't do nothing to hurt" Kenneth and that she "did not mean to shoot this man." She also told the detective: "[m]aybe I shot the gun, probably did, most likely I did. I did it," and "I am sure I

6

did" shoot Kenneth. When the detective asked Cynthia why she escalated the conflict by shooting Kenneth, Cynthia answered, "I don't know. He just went to talking [indiscernable] and I was already high."

During the interview, Cynthia also made general observations about her marriage with Kenneth. She stated that Kenneth had been caught kissing a former next-door neighbor a couple of years before the shooting. She also stated, "[m]y husband done whoop me, I ain't call no police. I just took it," and "[b]ruises all over my body, I mean I should have just took pictures not long [sic] and I could have something to show for it." Cynthia also observed that "when my husband gets drunk he says some awful s**t to me. He call me all kind of motherf**kers and I call you that back." She also noted that Kenneth was "an old f**king drunk man," and that "alcohol is his problem. And crack cocaine is mine."

At trial, Cynthia argued that she accidentally shot Kenneth. The trial court instructed the jury on accident but declined Cynthia's request to instruct the jury on self-defense.

After being convicted of malice murder and the other crimes noted above, Cynthia moved for a new trial. At the motion-for-new-trial hearing, she argued that the trial court's failure to give a self-defense instruction was harmful error. In its order denying Cynthia's motion for new trial, the trial court noted that it refused "a self-defense charge [at trial] because Defendant never explicitly admitted that she had shot the victim and never made any explicit claims about why she did so." The trial court also explained that a self-defense instruction was, in this case, "incompatible with [an] accident claim," on which it did instruct the jury. However, the trial court concluded that in refusing the requested self-defense charge, it had erred because under *McClure v. State*, 306 Ga. 856 (834 SE2d 96) (2019) "a defendant need not admit to anything in order to be entitled to an affirmative defense charge, so long as there is slight evidence to support it, and . . . a defendant need not choose between different affirmative defenses." But the trial court concluded that its error was harmless because trial counsel argued only that the shooting was an accident (i.e., not self-defense) in his opening

8

statement and because the evidence presented at trial did not show that Kenneth threatened Cynthia with imminent physical harm immediately before the shooting.

2. In her only claim of error, Cynthia contends that the trial court committed harmful error by declining to instruct the jury on self-defense. Assuming without deciding that there was slight evidence of self-defense and that the trial court in fact erred in declining to instruct the jury on self-defense, Cynthia's claim fails because she has not shown that any such error was harmful.

A nonconstitutional instructional error is harmless if "it is highly probable that the jury would have reached the same verdict even had the trial court given the charge." *Guerrero v. State*, 307 Ga. 287, 289 (835 SE2d 608) (2019). See also *Jones v. State*, 310 Ga. 886, 889 (855 SE2d 573) (2021) ("The test for determining whether a nonconstitutional instructional error was harmless is whether it is highly probable that the error did not contribute to the verdict.") (citation omitted). To make this determination, "we review the record de novo, and we weigh the evidence as we would expect

9

reasonable jurors to have done so as opposed to viewing it all in the light most favorable to the jury's verdict." *Carter v. State*, 308 Ga. 589, 593-594 (842 SE2d 831) (2020) (citation omitted).

As applied here, we examine the evidence presented at trial to determine whether "it is highly probable that the jury would have reached the same verdict even had the trial court given the charge" on self-defense under OCGA § 16-3-21. See *Guerrero*, 307 Ga. at 289. See also *Jones*, 310 Ga. at 889-890. That statute provides, in part:

> A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to defend himself or herself or a third person against such other's imminent use of unlawful force; however, except as provided in Code Section 16-3-23, a person is justified in using force which is intended or likely to cause death or great bodily harm only if he or she reasonably believes that such force is necessary to prevent death or great bodily injury to himself or herself or a third person or to prevent the commission of a forcible felony.

OCGA § 16-3-21 (a).

We conclude that the trial court's assumed error in declining to provide a self-defense instruction did not contribute to the jury's

10

verdict. The evidence presented at trial that Cynthia shot Kenneth in self-defense was weak: Cynthia presented evidence of past violence between her and Kenneth, as well as evidence that she and Kenneth "tussled" with each other and that Cynthia told Kenneth to "get [his] f**king hands off [her]" on the night of the shooting. But to the extent Cynthia offered this evidence to show that she reasonably believed that using deadly force was "necessary to prevent death or great bodily injury to . . . herself" on the night of the shooting, it was weak at best. See OCGA § 16-3-21 (a). To that point, evidence was presented that the handgun the Joneses kept in their house was not involved in that "tussling," and there was no evidence that Kenneth wielded a weapon at any point on the night of the shooting. Moreover, Cynthia told a detective that she was "sure" she shot Kenneth, and she declined to state a reason—let alone a reason related to self-defense—for doing so. See, e.g., *Jones*, 310 Ga. at 889 (holding that the trial court's pretermitted error in failing to charge on defense of self or a third person was harmless because "to the extent there was any evidence supporting a charge

11

on defense of self or a third person, it was meager at best" and a video recording of the shooting showed that the defendant was not in such danger that he reasonably believed that it was necessary to fire his gun to protect himself or his friend); *Calmer v. State*, 309 Ga. 368, 372-373 (846 SE2d 40) (2020) (assuming that slight evidence existed to support the requested charges on self-defense and no duty to retreat, the trial court's failure to charge on these principles was harmless error because "any weak inference that [the defendant] acted to prevent death or great bodily injury to himself is wholly undercut by other evidence to the contrary"). Additionally, Cynthia's emphasis at trial on her accident defense would have undermined a claim of self-defense—especially given the lack of evidence Cynthia presented to support the self-defense theory. To that end, evidence was presented that immediately after the shooting, Cynthia told Dent the shooting "was an accident," and trial counsel said in her opening statement that the shooting was a "tragic accident." Cf. *McClure*, 306 Ga. at 866 (Nahmias, P.J., concurring) ("[O]ur opinion today should not cause trial courts to

12

worry too much if they fail to give an instruction on an alternative defense that is supported by only the slightest evidence and that is inconsistent with the defendant's own account of the events or with the main defense theory presented at trial. Such an omission will likely be harmless error and almost certainly will not amount to plain error.").

Given the evidence presented at trial and recounted in part above, "it is highly probable that the jury would have reached the same verdict even had the trial court given the charge" on self-defense. *Guerrero*, 307 Ga. at 289. We therefore conclude that the trial court's error, if any, in declining to charge the jury on self-defense was harmless. See id.

*Judgment affirmed. All the Justices concur.*