NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: May 14, 2024

S24A0570.  GRAY v. STATE

MCMILLIAN, Justice.

LaVante Pierre Gray appeals from his convictions for felony murder and possession of a firearm during the commission of a felony in connection with the death of James Jones.[1] As his sole enumeration on appeal, Gray asserts that the trial court erred by refusing to give his request for jury charges supporting the defense of justification. Even assuming that the trial court erred, we

_____

[1] Jones died on September 1, 2017, and Gray was indicted by a DeKalb County grand jury on January 4, 2018, on charges of malice murder (Count 1), felony murder (Count 2), aggravated assault (Count 3), and possession of a firearm during commission of a felony (Count 4). Gray was tried before a jury in July 2021 and acquitted of Count 1 but found guilty of Counts 2, 3, and 4. The trial court sentenced Gray to serve life in prison on Count 2 and to serve five years in prison on Count 4, to run consecutively to Count 2. Count 3 was merged into Count 2 for sentencing. Gray filed a motion for new trial on July 30, 2021, which was amended by new counsel on March 15, 2023. The trial court denied Gray's motion as amended on June 29, 2023, and Gray timely filed a notice of appeal. This appeal was docketed to the April 2024 term of this Court and submitted for a decision on the briefs.

conclude that any error was harmless, so we affirm.

1. The evidence at trial showed the following.[2] On September 1, 2017, Jones and Gray were sitting in Gray's car in Jones's uncle's driveway when Jones realized his wallet was missing. Jones began searching Gray's car for his wallet, and at least one witness testified that Gray assisted in the search. When the wallet could not be located, Jones asked if Gray had taken the wallet and then requested that Gray empty his pockets. Gray denied taking the wallet but refused to empty his pockets. The two men began discussing the matter, which turned into an argument.

During the argument, Gray tried to drive away, but Jones got into the car to stop Gray from leaving. As one witness described it, Gray "tried to pull off, but [Jones] wouldn't allow him," and another testified that Gray was "trying to back out to leave" when Jones

---

[2] Because this case considers whether an error in instructing the jury was harmless, see Division 2 below, "we review the record de novo, and we weigh the evidence as we would expect reasonable jurors to have done so as opposed to viewing it all in the light most favorable to the jury's verdict." *Jones v. State*, 317 Ga. 853, 856-57 (2) (896 SE2d 493) (2023) (citation and punctuation omitted).

jumped into the car. The two men "tussled" over the car key, which was in the ignition, when Jones grabbed the key and it broke in half. Jones retained the electronic key fob that allowed the car to function, while the remainder of the key remained stuck in the ignition.

The car's engine cut off at that point, and the car rolled into the street. The two men continued to argue. Jones told Gray that he was not going anywhere until Jones got his wallet. While both men were still in the car, Gray pulled a gun out of the driver's side door pocket and ordered Jones out of the car while demanding his key fob. Jones exited the vehicle in response but did not give up the key fob. Gray's car would not restart after Jones got out of the car because Jones had the key fob.

At some point, as the two men kept arguing, the matter turned into a physical fight in the street, which did not last long and did not result in any serious injuries, although Gray had a bloody lip and a black eye. One witness testified that it was a "fair draw," and another witness testified that Jones got the better of Gray but he said no one was really hurt, just Gray's pride. While the evidence is

somewhat conflicting as to when this fight occurred, most of the witnesses testified that the fight happened after Jones took the key fob and was out of the car.

At some point after the car rolled into the street, Gray, along with others, including Jones, pushed his vehicle out of the way of other traffic and positioned the car to allow someone to give his car's battery a charge. Jones stood in the street by the passenger side of Gray's car, complaining about Gray's actions in a cell phone call to Jones's cousin, and continued arguing with Gray, who stood by the driver's side door demanding his key fob.

Then Gray walked around the front of the car, still demanding his key fob, and shot Jones approximately six times. Gray continued shooting Jones even after Jones was on the ground. One witness said that after the first two shots, Jones appeared to go toward Gray before he "buckle[d] down to the ground," and another witness heard Jones say, as he lay on the ground, "Don't kill me." That witness further testified that Gray continued firing even after he grabbed his key fob from Jones. After getting the key fob, Gray drove away.

4

The witnesses to the shooting all testified that Jones was unarmed and that only Gray had a weapon. The witnesses denied having seen anyone remove a weapon from Jones after the shooting.

Jones was taken to the hospital by ambulance, but he was deceased by the time police arrived there to question him. Investigators did not locate a weapon at the crime scene, nor did they ever locate the weapon used to shoot Jones. Jones's wallet was found five days later in a shopping center parking lot, where he had apparently dropped it. Gray was arrested over a month later in Ohio.

The medical examiner testified that Jones was shot six times. One of the wounds was "definitely fatal" and several others were "very serious but potentially not life-threatening." He said that the wounds reflected that Jones may have been shot while standing, although "an equally likely scenario" was that he was shot several times after he fell to the ground. The medical examiner did not see any soot or stippling around any of the wounds, so it was more likely than not that Jones was shot from more than three feet away. Gray

5

did not testify at trial.

2. Gray argues on appeal that the trial court erred in refusing to give the jury charges he requested on self-defense because slight evidence was presented that he acted to prevent a forcible felony. At trial, Gray sought a jury charge under OCGA § 16-3-21 (a), which provides that

> a person is justified in using force which is intended or likely to cause death or great bodily harm only if he or she reasonably believes that such force is necessary to prevent death or great bodily injury to himself or herself or a third person or *to prevent the commission of a forcible felony*.

OCGA § 16-3-21 (a) (emphasis supplied). A "forcible felony" is defined as "any felony which involves the use or threat of physical force or violence against any person." OCGA § 16-1-3 (6).

"Whether the evidence presented is sufficient to authorize the giving of a [jury] charge is a question of law," *McClure v. State*, 306 Ga. 856, 863 (1) (834 SE2d 96) (2019) (citation and punctuation omitted), which this Court reviews de novo. See *Reese v. State*, 314 Ga. 871, 880 (2) (880 SE2d 117) (2022). "[T]o authorize a jury

6

instruction, there need only be produced at trial slight evidence supporting the theory of the charge." *State v. Newman*, 305 Ga. 792, 796-97 (2) (a) (827 SE2d 678) (2019) (citation and punctuation omitted). But "[e]ven when we find error in a jury charge, we will not reverse when the error is harmless." *Jones v. State*, 302 Ga. 892, 897 (3) (810 SE2d 140) (2018). See also *Hodges v. State*, 302 Ga. 564, 567 (3) (807 SE2d 856) (2017). "The test for determining whether a nonconstitutional instructional error was harmless is whether it is highly probable that the error did not contribute to the verdict." *Jones v. State*, 310 Ga. 886, 889 (2) (855 SE2d 573) (2021) (citation and punctuation omitted).

Prior to trial, Gray submitted written requests for jury charges on self-defense under OCGA § 16-3-21 (a), false imprisonment, and robbery. During the charge conference, his counsel asserted that the charges were authorized because at the time Jones was shot, he was engaged in committing two "ongoing" forcible felonies—robbery and false imprisonment—and that Gray shot Jones to stop the felonies from continuing. As for robbery, defense counsel argued that when

7

Jones suddenly snatched Gray's key fob from his immediate presence, a robbery occurred and continued "as long as the parties [were] out there, and [Gray was] trying to reclaim the key." Gray also asserted that Jones was committing false imprisonment when Jones told Gray that he could not leave until the wallet was returned, then "beat" Gray, and stopped him from leaving in his car. Defense counsel asserted that this evidence showed that Gray was being detained against his will and that false imprisonment under these circumstances constituted a forcible felony.

After hearing argument, the trial court denied Gray's request for a jury charge on self-defense based on the forcible felonies of robbery or false imprisonment. The trial court later denied Gray's motion for new trial on this ground.

Assuming without deciding that the trial court erred in failing to provide a charge on self-defense to prevent a forcible felony, we conclude that it is highly probable that any error did not contribute to the verdict. The evidence against Gray was strong. Multiple witnesses saw Gray argue with Jones over whether Gray had taken

8

Jones's wallet. These witnesses also saw Gray fight with Jones and, after the passage of some time, shoot Jones outside the car while demanding the key fob; Gray then took the key fob and drove away. One witness testified that Gray shot Jones twice, then stood over Jones saying "give me my key," while Jones said only, "Don't kill me." This witness said that Gray then grabbed the key fob and shot Jones "like four or more times." None of the witnesses saw Jones with a gun, nor does Gray claim that Jones had a gun.

Instead, Gray claims that he was justified in shooting Jones to prevent Jones from committing two forcible felonies—robbery by sudden snatching and false imprisonment. But the evidence supporting this defense was weak because any robbery had been completed at the time of the shooting[3] and the evidence did not support that deadly force was reasonably necessary to prevent the alleged false imprisonment. Under Georgia law, "[a] person commits the offense of robbery when, with intent to commit theft, he takes

---

[3] Gray does not contend that Jones took the key fob to steal his car, but rather to prevent Gray him from leaving until the wallet was returned.

property of another from the person or the immediate presence of another . . . [b]y sudden snatching." OCGA § 16-8-40 (a) (3). Gray asserts that Jones committed this crime by snatching his key fob from his immediate presence, and further argued that the robbery was continuing "as long as the parties [were] out there and [Gray was] trying to reclaim the key." However, this Court has held that the "taking" element of robbery "is not a continuing transaction which ends only when the defendant leaves the presence of the victim. Instead, the taking is complete once control of the property is transferred involuntarily from the victim to the defendant, even if only briefly." *Harrington v. State*, 300 Ga. 574, 577 (2) (a) (797 SE2d 107) (2017) (citation and punctuation omitted). See also *Fox v. State*, 289 Ga. 34, 36 (1) (b) (709 SE2d 202) (2011); *James v. State,* 232 Ga. 834, 835 (209 SE2d 176) (1974) ("It is not required that the property taken be permanently appropriated.").

Therefore, even assuming, without deciding, that Jones's act of snatching the electronic portion of Gray's key out of the car's ignition constituted the felony of robbery by sudden snatching and that such

a crime is a forcible felony, that crime was complete once Jones took control of the key fob such that a reasonable jury would likely conclude that the subsequent shooting (which took place after a later fight between Gray and Jones and after Gray moved and attempted to re-start his car) was not done to prevent the robbery. See OCGA § 16-3-21 (a) (justification if defendant reasonably believes that force required "to prevent the commission of a forcible felony"). Cf. *Robinson v. State*, 298 Ga. 455, 462 (5) (782 SE2d 657) (2016) (jury charge on self-defense in prevention of forcible felony addressing shooting death of defendant's partner in crime by a third party was appropriate because the *attempted* robbery of third party was an ongoing event at the time of the shooting).

Gray also asserts that Jones was engaged in the ongoing crime of false imprisonment at the time of the shooting. Under OCGA § 16-5-41 (a), "[a] person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority." Gray argues that the crime of false imprisonment was a continuing forcible felony in

this case because Jones broke and took Gray's key fob "for the specific purpose of preventing him from leaving, thereafter threatened repeatedly that [Gray] was not going anywhere, and finally engaged in a fistfight with [Gray] causing violent injury." Even if false imprisonment under these circumstances could be considered a forcible felony,[4] Gray was permitted to use deadly force "only if he . . . reasonably believe[d] that such force [was] necessary . . . to prevent the commission of a forcible felony." OCGA § 16-3-21 (a). The evidence that the shooting was necessary was weak. There was no evidence that Gray was in any physical danger from being unable to leave the scene in his car, and the evidence supported that

---

[4] Although false imprisonment is a felony, OCGA § 16-5-41 (b), nothing in the text of the false imprisonment statute expressly requires the use or threat of physical force or violence against someone to commit the offense. Thus, it is not clear that false imprisonment meets the statutory definition of a forcible felony even if the false imprisonment is accompanied by threats. And Gray has not pointed us to, nor have we found, any authority where false imprisonment has been defined, or treated based on the evidence presented, as a forcible felony under Georgia law. Cf. *Patel v. State*, 278 Ga. 403, 407-08 (6) (603 SE2d 237) (2004) (no error in limiting the jury's consideration of the justification defense to the situation in which an attack was directed at the person of defendant and excluding a charge of self-defense based on burglary as a forcible felony because "burglary is not *ipso facto* a forcible felony" as it does not require the use or threat of physical force or violence against any person).

Gray shot Jones, not because he reasonably believed that the shooting was necessary to free himself, but because he was angry that Jones did not give up the key fob. Jones was unarmed, yet Gray shot him at least six times, and he kept shooting even after Jones was on the ground. Gray then left the scene and was later found in another state. See *State v. Orr*, 305 Ga. 729, 741 (4) (b) (827 SE2d 892) (2019) ("[i]t is universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct [is] admissible as evidence of consciousness of guilt, and thus of guilt itself.") (citation and punctuation omitted).

In other cases where the evidence of guilt was strong and the evidence supporting a justification defense was weak, we have concluded that it was highly probable that the failure to give a jury instruction on justification did not affect the verdict and thus constituted harmless error. See *Jones*, 310 Ga. at 889 (2) (harmless error to fail to charge on defense of self or third person because "evidence supporting a charge on defense of self or a third person"

13

"was meager at best"). See also *Reese v. State*, 317 Ga. 189, 197 (2) (891 SE2d 835) (2023) (where evidence supporting self-defense theory was weak, failure to give justification instruction likely did not affect the outcome of the trial); *Munn v. State*, 313 Ga. 716, 723 (3) (873 SE2d 166) (2022) (defendant's substantial rights were not affected by not instructing the jury on justification when evidence in support of the defense was weak). Just so here. Accordingly, Gray is not entitled to a new trial on this ground.

*Judgment affirmed. All the Justices concur.*