NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: December 9, 2025

S26A0101. WESTBROOK v. THE STATE.

PETERSON, Chief Justice.

Kimberly Westbrook appeals her convictions for malice murder and armed robbery in connection with the stabbing death of Eric Eloi.[1] Westbrook claimed that Eloi allowed her to stay in his hotel room in exchange for sex and that she stabbed him because she

---

[1] Eloi was killed in April 2021. On August 5, 2021, a Chatham County grand jury returned an indictment charging Westbrook with malice murder (Count 1), two counts of felony murder (Counts 2 and 3), armed robbery (Count 4), and aggravated assault (Count 5). Counts 2 and 3 both charged felony murder predicated on armed robbery, and Count 3 was nolle prossed. At a trial in October 2023, a jury found Westbrook not guilty of felony murder predicated on armed robbery and guilty of malice murder, armed robbery, and aggravated assault. On November 7, 2023, the trial court sentenced Westbrook to life in prison for malice murder and a concurrent life sentence for armed robbery; the aggravated assault count merged. Westbrook filed a timely motion for new trial, which was amended by appellate counsel in August 2024. Following a hearing, the trial court denied Westbrook's motion in an order entered on July 29, 2025. Westbrook filed a timely notice of appeal, and the case was docketed to this Court's term beginning in December 2025 and submitted for consideration on the briefs.

feared that he was going to rape her. In her sole enumeration of error, she argues that the trial court erred in its charge to the jury on justification. We conclude that any error was harmless, and we affirm.

The evidence at trial showed the following.[2] On April 26, 2021, first responders were called to a guest room at an InTown Suites in Chatham County. There, they discovered Eloi's dead body. Eloi had been dead for several days, was in an advanced state of decomposition, and had been stabbed approximately 14 times with a sharp object. Some of Eloi's personal items, such as his bicycle, credit card, driver's license, and cell phone, were missing.

The investigation led to Westbrook as a suspect. An examination of Eloi's bank records showed that Eloi's bank account had been used to book a room at a nearby Econo Lodge after his

---

[2] Because Westbrook does not raise a claim that the evidence to support her convictions was insufficient as a matter of constitutional due process, and because the enumeration that she does raise requires us to consider the strength of the evidence in determining whether assumed instructional errors by the trial court were harmless, we review the record de novo, and we weigh the evidence as we expect reasonable jurors would have viewed it, rather than viewing it all in the light most favorable to the verdicts. See *Fripp v. State*, 322 Ga. 269, 277 (2025).

death. A photo of the debit card associated with that account was found on Westbrook's cell phone. Video surveillance from the Econo Lodge showed Westbrook apparently throwing something into a dumpster on May 3, 2021. Video surveillance from a nearby market showed Westbrook riding Eloi's bicycle.

After her arrest for financial transaction card fraud and theft, Westbrook gave a statement to an investigator. A recording of her statement was admitted at trial, and portions were played for the jury. Westbrook stated that Eloi was a "trick" (that is, a prostitution customer) with whom she had been staying. She readily admitted to the investigator that she hit Eloi in the head with a glass bottle, stabbed him several times, and took his wallet, cell phone, and bicycle. Westbrook told the investigator that she killed Eloi because he had been "abusive," hit her on previous occasions, and "flipped out on" her. She also said that she had been "fed up with all the bulls\*\*t" and "flipped out" and "flashed out." She admitted that Eloi did not hit her on the night that she stabbed him. She did not specifically mention any past sexual abuse by Eloi or even that Eloi

3

had made unwanted sexual advances toward her that night.

Testifying in her own defense at trial, Westbrook said that she was homeless and working as a prostitute when she met Eloi in 2021. Westbrook testified that Eloi had offered to let her stay with him at the InTown Suites in exchange for sex "[w]henever he asked for it," although they agreed that she "had to say yes too." Westbrook testified that Eloi had hit and slapped her and called her derogatory names. She also recalled five or six incidents in which Eloi had raped her while they were living in the hotel. She testified that sometimes Eloi would attempt to have sex with her but she would avoid him by curling in a fetal position or running to the bathroom; this refusal would cause Eloi to become mad and give her an angry look, Westbrook said. She also testified that sexual intercourse with Eloi hurt her in her "private area." She conceded that Eloi never threatened her. Westbrook recalled an instance when she was alone in a car with Eloi's adult daughter and mentioned to the daughter that Eloi had been "yelling" at her and calling her "names," but Westbrook acknowledged that she did not tell the daughter that Eloi

4

had sexually assaulted her.

On the night that she killed Eloi, Westbrook testified, Eloi's behavior had been "all right" when he came home from work. It had been days since he last forced her to have sex. Eloi lay down on the bed next to her and began touching her, including on her breasts, buttocks, and "private area," giving her "[t]hat devil look." Westbrook told him "no" but thought that he was going to rape her. About an hour and a half later, Eloi appeared to be "dozing off." Westbrook got out of bed, retrieved a wine bottle from on top of the refrigerator, struck Eloi in the head with it, and stabbed him with a knife that Westbrook had stashed under the bed. Westbrook testified that she did not remember how many times she had stabbed Eloi, then testified that she "kind of remember[ed]" stabbing him twice but that there were parts of the incident that she did not remember. In explaining her actions, Westbrook cited Eloi's previous rapes and her fear that he was about to rape her again, as well as testifying that she was "scared" and in "[f]ear for [her] life." Asked by her counsel, "[I]f you didn't hit him with that wine bottle,

5

what did you think was going to immediately happen to you?" Westbrook replied, "He was going to rape me." She also testified that she "was just fed up," "just tired," "tired of being raped," and "tired of doing things that [she didn't] want to do."

The defense also introduced expert testimony on trauma, abuse, post-traumatic stress disorder ("PTSD"), and battered person syndrome. The defense expert testified that she had met with and evaluated Westbrook and that Westbrook has battered person syndrome and PTSD and is on the autism spectrum. The expert testified that the battered person syndrome and PTSD were caused by Westbrook's relationship with Eloi. The expert testified that some people with battered person syndrome or PTSD at some point become certain that "they're going to be killed," "[w]hether they are or not," which leads to "total terror," and that fear of an impending rape could trigger that same level of terror. Regarding the night in question, the expert testified, "Now, what we find with people with battered person syndrome and PTSD, is once they pick up a weapon, or begin to use a weapon, then their terror multiplies, because then

6

they feel like — like they're soon to be harmed or killed, that they've stood up to somebody, and that person who they stood up to is in such a rage, that whatever they've done before is going to happen and more. So she was more scared after she hit him with the bottle, than she was — had been before." The defense expert testified that Westbrook in speaking to the expert recalled only parts of the night that she killed Eloi, which the expert described as disassociation that is typical of PTSD.

In her written jury instruction requests, Westbrook requested that the trial court charge the jury on justification, including the use of force to prevent the commission of a forcible felony. See OCGA § 16-3-21(a). In particular, the defense requested that the trial court identify the forcible felonies as rape, aggravated assault with intent to rape, and aggravated battery. The trial court instructed the jury that a defendant is justified in using deadly force when she reasonably believes such force is necessary to prevent a death or serious bodily injury to herself or the commission of a forcible felony, specifically identifying rape as such a felony, and provided a

7

definition of rape. See id. But the trial court declined to mention aggravated assault with intent to rape or aggravated battery as such a felony in the instructions. Westbrook objected to this omission from the jury instructions after the charge was given.

On appeal, Westbrook argues that the trial court erred by declining to identify and define aggravated assault with intent to rape or aggravated battery as forcible felonies in the court's justification instruction to the jury. She argues that because she testified that she sometimes curled up in a ball or ran to the bathroom, thwarting Eloi's attempt to rape her on some occasions, the jury could have found that she was afraid of being the victim of an aggravated assault with intent to rape. She also argues that the testimony about painful intercourse supported a charge on aggravated battery, and that the evidence that Westbrook and Eloi had an arrangement where Eloi agreed to let her live with him in exchange for sex "whenever he asked for it" could have led the jury to conclude that Westbrook was a consenting party to the sex but nonetheless would have been justified in protecting herself from an

8

aggravated battery, i.e., from sexual intercourse that deprived her of the use of her sexual organs.

"[W]hen the prevention of a forcible felony is charged as justification and the defendant requests a charge on the specific forcible felony of which there is evidence, it is error to fail to charge the elements of such a felony as it relates to justification." *Wiseman v. State*, 249 Ga. 559, 561 (1982). But "[e]ven when we find error in a jury charge, we will not reverse when the error is harmless, that is, when it is highly probable that the instruction did not contribute to the verdict." *Fripp v. State*, 322 Ga. 269, 277 (2025) (quotation marks omitted). "To figure out whether an instructional error was harmless, we assess it in the context of the instructions as a whole." Id (quotation marks omitted). "And as with other trial errors, in assessing harm we review the record de novo, and we weigh the evidence as we would expect reasonable jurors to have done so." Id. (quotation marks omitted).

Assuming without deciding that the trial court erred by failing to give the requested instructions, we conclude that any error was

harmless. The theories of justification associated with these requested instructions were related to, and based on the same evidence as, the theories of justification on which the jury was actually instructed. That evidence was not strong: Westbrook's justification claim was supported only by her self-serving statement and testimony and the testimony of her expert, which in turn was based on what Westbrook told her in preparation for trial. Westbrook's defense was further weakened by discrepancies between her testimony and her statement to an investigator, in which she did not mention sexual abuse specifically or say that she had killed Eloi because she feared that he was going to rape her. The jury convicted Westbrook despite being instructed on the justification theories most directly supported by the evidence, i.e., Westbrook's testimony that she killed Eloi because she thought he was going to rape her and that she feared for her life.

It is highly unlikely that the same jury would have acquitted Westbrook had it been instructed on other, related scenarios with even weaker support in Westbrook's testimony. In other words, a

jury that convicted Westbrook despite an instruction that she would have been justified if she reasonably believed her use of force was necessary to prevent rape was highly unlikely to acquit if offered the same instruction about aggravated battery based on a theory of painful intercourse, or aggravated assault with intent to rape based on a theory of an attempted rape that she would have thwarted. Therefore, it is highly probable that the trial court's refusal to charge on the additional forcible felonies did not contribute to the verdict. See *Gray v. State*, 319 Ga. 72, 76–78 (2024) (any error in failure to give any charge on self-defense to prevent a forcible felony as requested was harmless given the strength of the evidence of guilt and weak evidence of justification).

*Judgment affirmed. All the Justices concur.*